[Crim. No. 5788.   Second Dist., Div. One.   Mar. 13, 1957.]

THE PEOPLE, Respondent, v. LOUIS GUERRERA, Appellant.

Louis Guerrera, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and James D. Loebl, Deputy Attorney General, for Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of the crime of violation of section 11500 of the Health and Safety Code.

The defendant was charged in an information filed June 14, 1956, in Los Angeles County, with having in his possession, on or about May 26, 1956, a preparation of heroin and further it was alleged that he had previously been convicted of two prior felony convictions and served a term in the state prison therefor. The defendant was represented by the public defender at the arraignment and entered his plea of not guilty to the charge and denied the prior conviction. All parties concerned stipulated to waive a trial by jury and to submit the plaintiff's case in chief on the testimony set forth in the transcript of the preliminary hearing and plaintiff's Exhibit 1 for identification. At the first part of the hearing in the trial court, the defendant admitted the priors as alleged. Each side then produced additional evidence and the judge found the defendant guilty as charged in the information and sentenced him to the state prison.

The facts are substantially as follows: A police officer received information from a confidential informant who had, on at least four previous occasions, given information to the officer and had proved to be credible on those occasions. Further, the officer had known the informant for about six weeks and had seen him on practically every working day. The officer received the information about 9:30 o'clock p. m.,

to the effect that the defendant, a male Mexican known as Topo or Louie, was peddling and using narcotics from his apartment at 2526 East First Street, Los Angeles, and that he had a large quantity of narcotics which he carried in a finger stall and was located either on his person or behind a piece of oil cloth tacked back of the kitchen stove. The officer who had received the information from the informant, and another officer and the informant drove to the address named at about 10 o'clock p. m., on May 26, 1956. The informant pointed out the entrance door to the facility where the defendant resided and then left. The officers observed the place for about 10 to 15 minutes, during which time they saw a person leave the building whom they recognized as a drug addict who had previously served time for narcotic violations. The two officers then approached the entrance door to the apartment, and pounded on the door and announced in a loud voice, "Police officers. Open the door." There was no response to their pounding. They then heard sounds coming from within the apartment, indicating motion and activity therein, and in about three to ten seconds later the second officer broke the door down and the officers entered. The facility consisted of two small rooms, a bedroom and a kitchen. The defendant was found in the bedroom and was searched, but no narcotics were found on him. The first officer then went to the kitchen and searched, and behind a piece of oil cloth about 18 inches square, back of the stove, found a finger stall containing 42 capsules filled with a white powder. There was also found a plastic container in which there was a bottle cap, an eye dropper and a hypodermic needle. The defendant stated that none of the items were his. At the police station the defendant, when asked ". . . how much stuff he was using," stated freely and voluntarily to an officer, "Not much." The officer then asked him when he had his last "fix," and Guerrera answered, "Not for two days." The defendant also stated that he had been living in the apartment for about a week and that he lived alone. His arms contained fresh needle marks on the upper portion of his right elbow and a track about an inch long on his wrist. The capsules were marked, and later an expert chemist examined the contents of 15 of the capsules selected at random and each of the selected capsules contained heroin.

The defendant contends that the evidence introduced against him was inadmissible in that it was a product of an illegal search and seizure under the Fourth Amendment of

the Constitution of the United States, and under article I, section 19 of the Constitution of the State of California, and *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905]. We are of the opinion that under the facts and circumstances of this case, there is no merit to any of the contentions of the defendant.

ᶜ On the question of probable cause to make an arrest, the reliability of the informant and the reasonableness of the information supplied is what counts the most with the officer in making up his mind what to do. █ A valid arrest may be made solely by reason of the information communicated by a single reliable informant. (*Trowbridge* v. *Superior Court,* 144 Cal.App.2d 13, 22-23 [300 P.2d 222]; *People* v. *Gonzales,* 141 Cal.App.2d 604, 606 [297 P.2d 50].)

In the case before us, the information theretofore supplied by the informant had been credible, and in addition the officers saw a known narcotic user leave the building in which the defendant maintained his apartment. (*People* v. *Montes,* 146 Cal.App.2d 530, 532 [303 P.2d 1064].)

█ The Fourteenth Amendment of the United States Constitution does not prohibit the use of such evidence, even assuming it was illegally obtained, and we hold it was not so illegally secured. (*Wolf* v. *Colorado,* 338 U.S. 25, 31 [69 S.Ct. 1359, 93 L.Ed. 1782]; *People* v. *Cahan, supra,* 44 Cal. 2d 434, 441.)

█ The officers had good and reasonable grounds to believe that the defendant had committed a felony and accordingly they had a right to search the entire premises then under the control of the defendant. (*People* v. *Dixon,* 46 Cal.2d 456, 459 [296 P.2d 557].)

█ As to the breaking of the door of the defendant's apartment, under the circumstances, in this case, the officers were well within their rights and no civil rights of the defendant were violated. To have delayed might very well, in this instance, have provided the defendant with sufficient time within which to have destroyed the evidence, and, in our opinion, it was not improper for them to break down the door and enter as they did. (*People* v. *Maddox,* 46 Cal. 2d 301, 306 [294 P.2d 6].)

█ The defendant also complains that the court erred in not specifically asking him if he had any reason why sentence should not be pronounced. The record discloses that the defendant was represented by Stanley Brill, a skilled representative in the public defender's office. When the court

inquired, "Have you any legal cause to show why sentence should not now be pronounced?" Brill replied, "No, there isn't, your Honor." It is clear that the defendant is now bound by the actions taken in his behalf by his attorney. Furthermore, the defendant was asked if he wanted to be sentenced that morning, and he replied, "Yes."

The judgment is affirmed.

White, P. J., and Doran, J., concurred.