[Crim. No. 3408.  First Dist., Div. One.  Mar. 10, 1958.]

THE PEOPLE, Respondent, v. RUDOLPH AGUIRRE, Appellant.

[Crim. No. 3409.  First Dist., Div. One.  Mar. 10, 1958.]

THE PEOPLE, Respondent, v. JOSEPH GONZALES AGUIRRE, Appellant.

Milton L. Ageson, under appointment by the District Court of Appeal, for Appellants.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and John S. McInerny, Deputy Attorney General, Louis P. Bergona, District Attorney (Santa Clara), and Louis C. Doll, Deputy District Attorney, for Respondent.

WOOD (Fred B.), J.—Charged by separate informations but tried together, Rudolph and Joseph Aguirre were convicted upon two counts each for robbery (Pen. Code, § 211), one on November 3, 1956, at a drug store in Santa Clara, the other on November 24, 1956, at a market on Stevens Creek Road. Rudolph was convicted of carrying a gun at the time of the robbery of the market.

Each defendant has appealed. Neither of them questions the sufficiency of the evidence. Each claims that evidence of identification was weak and that asserted errors in the submission of evidence and asserted misconduct upon the part of the district attorney and of the jury foreman were prejudicial.

### I. Asserted Errors in the Admission of Evidence

A gun was put in evidence as resembling a gun carried by a confederate of the defendants at the time of the drug store robbery. Defendants objected for lack of a proper foundation, claiming identification was incomplete when the showing is merely that "this resembled the gun" carried at the time. A positive identification is not required when a gun is

introduced for purposes of illustration. (*People* v. *Sampsell*, 104 Cal.App. 431, 441 [286 P. 434] ; *People* v. *Ferdinand,* 194 Cal. 555, 563 [229 P. 341].)

█ Defendants did not request an instruction telling the jury that the gun was introduced for the purpose of illustration only. Had they done so, it presumably would have been given. It is too late now for them to complain of the failure to give it.

█ *Testimony of identifying witnesses descriptive of their identification of a defendant from pictures and at a lineup* was relevant and proper. In *People* v. *Slobodion,* 31 Cal.2d 555, 559-560 [191 P.2d 1], the court concluded, after a review of the cases : "the evidence by the prosecutrix that she identified defendant in a lineup after the offense was admissible to corroborate her story and to rebut the suggestion that her identification at the trial was the result of recent contrivance. The same considerations apply to the testimony of the police officer that he saw the witness identify defendant." (See also *People* v. *Hood,* 140 Cal.App.2d 585, 588 [295 P.2d 525] ; *People* v. *Bennett,* 119 Cal.App.2d 224, 226 [259 P.2d 476].)

█ *A codeine bottle identified as taken from the drug store and found in defendant Rudolph's bedroom, was properly admitted in evidence.* The objections interposed were that the arrest was made without a warrant, the search was made without a search warrant, the officer had time to get warrants, and the officer was looking for the gun used during the robbery of the market, not for anything which pertained (as did the codeine bottle) to the robbery of the drug store. These matters were considered by the trial court and determined adversely to defendants' contentions. We find in the record no basis for disturbing that determination.

From photographs presented to her, a clerk at the market informed Officer Hutchings that Rudolph was one of the robbers. Hutchings, ascertaining that Rudolph was on parole, phoned to the parole officer, who was in San Francisco, and the next morning the two of them went to Rudolph's home. Rudolph came to the door. Hutchings told him they wanted to talk to him. Rudolph suggested talking in their automobile. Hutchings said it was cold. Rudolph let the officers into the house and after Hutchings asked which was Rudolph's room, let them upstairs. After they got there, Hutchings informed Rudolph he was under arrest for robbery. Hutchings found the codeine bottle on the floor by the side of the mattress where Rudolph said he slept. This was a different room and Rudolph

had previously closed the door to this room after being informed he was under arrest.

The trial court found the officer had reasonable cause to believe that Rudolph had committed a felony; hence, the arrest without a warrant was legal and the search, incident to the arrest, was proper. Such a search is not rendered unlawful by the finding and seizure of evidence (a bottle that had been taken from the drug store) other than that which the officer was looking for (the gun used during the market robbery). (See *People v. Vallarico*, 140 Cal.App.2d 233, 238 [295 P.2d 76], and authorities cited, as to legality of such an arrest and of a reasonable search incident thereto; *People v. Jiminez*, 143 Cal.App.2d 671 [300 P.2d 68], discovery and seizure of evidence of a crime different from that under search.) Nor does the fact that Rudolph's bedroom may also have been used by his father invalidate the search. (See *People v. Littlejohn*, 148 Cal.App.2d 786, 791 [307 P.2d 425], *People v. Guerrera*, 149 Cal.App.2d 133, 136 [307 P.2d 940]; *Trowbridge v. Superior Court*, 144 Cal.App.2d 13 [300 P.2d 222]; *People v. Guy*, 145 Cal.App.2d 481 [302 P.2d 657].)

■ *Certain extrajudicial statements of Rudolph to a police officer were admissible by way of impeachment.* Upon direct Rudolph testified he did not know for sure where he was the night the market was robbed. He said that probably he was in a movie or at a dance, because every Saturday he went to a movie or a dance. In the statement to Officer Hutchings he said that on that day he walked around town from 5 to 6 o'clock, went home, got his automobile and went to Jackson Street. He said that he saw "kids—small kids" there but did not state their names. Between 7:30 and 8 o'clock he left with a friend whose name he did not give and went to a café on Post Street. From there he went to the Flamingo and stayed until 2 o'clock in the morning.

The statement included what Hutchings said to Rudolph at the time, some of which might well have been excluded if defendant had objected to specific portions of it. But he did not do so. He should not be heard now to complain. Nor do we think it prejudicial even if defendant had pointedly objected and had been overruled.

■ *Testimony that defendants' confederate in the drug store robbery, Gary Perry, was arrested, pleaded guilty and was sentenced,* was irrelevant. (See *People v. Ford*, 89 Cal. App.2d 467 [200 P.2d 867]; *People v. Townsend*, 28 Cal.App. 204 [151 P. 745]; 48 A.L.R.2d 1016, 1017.)

Officer Hutchings testified that, according to his information, three men were involved in the November 3 robbery, that "the light complected one, whose name was Gary Perry" was arrested. A general objection to this question was overruled. In response to a question whether he was "charged," and before the court ruled on a general objection to the question, the witness volunteered that Perry had pleaded guilty and was sentenced. The court sustained an objection to the question after the answer had been given, remarking that he thought this was hearsay. The prosecuting attorney then asked, "And the light complected person was known as Gary Perry and was arrested on November 12th? A. That's correct." This question incorporated the prior hearsay in assuming that the officer was competent to testify as to Gary Perry's participation in the November 3 robbery, but the objection was not renewed, and no motion to strike the testimony of this witness was made. Moreover, we do not think that this testimony could have resulted in a different verdict than the jury would have given without it.

II. ASSERTED MISCONDUCT OF THE DISTRICT ATTORNEY

Upon rebuttal the prosecutor called Raymond Cappa, who operated a grocery store about three-quarters of a mile from the market here involved. He testfied that at about 7:30 p. m. of the day after the market robbery, a two-toned green Chevrolet with two men in the front seat (there is evidence that the defendants traveled in such a car) stopped in front of his store, but did not come in. Cappa was unable to describe those men.

Upon the conclusion of this testimony, defendants moved that it be stricken and the jury instructed to disregard it. It was stricken. The judge did not immediately admonish the jury. He may have done so later but none of the instructions given after argument of counsel are in the record.

We can not say as a matter of law that the prosecutor put Cappa upon the witness stand other than in good faith. Nor did defendants assign such action as misconduct.

We do not consider that this incident resulted in prejudicial error.

III. WAS THE FOREMAN OF THE JURY GUILTY OF MISCONDUCT?

During a recess the jury foreman was observed talking with one of the prosecution witnesses. Defendants moved for a mistrial.

It developed that they were discussing social subjects only.

The judge decided that the incident was unimportant, admonished the juror not to let it happen again, and proceeded with the trial.

Such activities upon the part of a juror are disapproved. (*People* v. *Dunne,* 80 Cal. 34, 36 [21 P. 1130]; *People* v. *Phelan,* 123 Cal. 551, 567-568 [56 P. 424].) But the record does not show that the trial court committed an abuse of discretion under the circumstances of this case. (See *People* v. *Cobb,* 45 Cal.2d 158, 161 [287 P.2d 752]; *People* v. *Quiel,* 68 Cal.App.2d 674, 679-680 [157 P.2d 446].)

Though some errors did occur during the course of the trial we do not find them prejudicial in view of the convincing character of the evidence identifying Rudolph and Joseph as active participants in each of the two robberies charged.

Defendants' counsel upon this appeal, appointed by the court, did not represent them at the trial. His brief shows a thorough and painstaking search of the record and able representation of every point that conceivably might be presented in defendants' behalf.

In each case the judgment is affirmed.

Peters, P. J., and Bray, J., concurred.