[Crim. No. 6619.   Second Dist., Div. Three.   May 25, 1959.]

THE PEOPLE, Respondent, v. THOMAS GEORGE CARTIER, Appellant.

Thomas George Cartier, in pro. per., for Appellant.

No appearance for Respondent.

SHINN, P. J.—In a court trial, Thomas George Cartier was convicted of second degree burglary and was sentenced to nine months in the county jail. He appeals from the judgment and from the denial of his motion for new trial.

Upon application of appellant for appointment of counsel

the matter was referred to the Committee on Criminal Appeals of the Los Angeles Bar Association with a request for a report which would direct our attention to any matter disclosed by the record which would indicate that the applicant might be entitled to some relief. Upon receipt of a report from a member of the committee that no meritorious ground of appeal had been found, and in accordance with our settled practice, we examined the record in order to ascertain whether appointment of counsel would serve any useful purpose. Having determined that the appeal appeared to be without merit we denied the application for appointment of counsel and notified appellant of our order, substantially extending his time to file a brief. No brief having been filed, we have reexamined the record and are disposing of the appeal by written opinion.

The evidence consisted of that received at the preliminary hearing and additional evidence introduced at the trial. On the morning of June 19, 1958, an employe of Durland's Fireside Café in Los Angeles discovered that the premises had been broken into and the office ransacked; a floor safe containing about $1,100 in cash and checks had been cracked and damaged and money sacks were lying on the floor. It was established that the safe had been opened by punching out the dial. Cartier was identified by Durland's bartender as having been drinking at the bar in the company of another man from midnight to 2 a. m. on June 19th.

Four Los Angeles police officers assigned to the Hollywood Detective Bureau went to the apartment occupied by appellant and his wife on Los Feliz Boulevard shortly after midnight on July 3d. The officers had neither a search warrant nor a warrant for Cartier's arrest. They entered the apartment using a passkey supplied by the apartment house manager, identified themselves as police officers and placed the Cartiers under arrest for burglary. The officers made a search of the premises and discovered a suitcase and an overnight bag in a closet in the kitchen. Inside the bags they found two punches, a dial puller, a flashlight, a pair of cotton gloves, pry bars, hammers and other tools. Officer Gabard, a qualified police chemist, testified that he made a microscopic comparison of marks found on the punches and on the lid belonging to the damaged safe in Durland's office. He stated his opinion that the marks on the lid were made by one of the punches found in Cartier's apartment. The punches, the safe lid and several photographs showing the marks on the punches and on the lid were received in evidence. The punch, which is before us

as an exhibit, shows many definite irregularities. The photograph of the lid also shows clear and distinct indentations made by the tool that was used in punching out the dial. The exhibits furnished a sound basis for an accurate comparison of the marks on the punch with the marks on the safe.

Officer Peter Bishonden was one of the investigating officers in the case. Over the objection of appellant's counsel that the corpus delicti had not been established, Bishonden was permitted to relate the substance of several conversations he had with Cartier at the police station between July 3d and 10th, the date of the latter's arraignment. Bishonden testified that on July 3d he showed Cartier the tools found in the apartment and asked whether they were his; appellant replied that they were. During the conversation on July 10, Cartier told the officer that he used the tools in making minor electrical repairs around his apartment. When the officer suggested that the tools were burglar's tools and that appellant had been using them on "jobs," Cartier denied knowing that they were burglar's tools and stated: "Well, I never said they were mine." Upon being asked what he used the punches for, appellant told Bishonden that he could not remember. In response to the officer's questions about the Durland's burglary, Cartier said: "There is nothing I can tell you about it."

Appellant, testifying in his own behalf, denied his guilt of burglary. The tools he had in his apartment were ordinary household tools and none of the tools shown to him at the police station by Officer Bishonden belonged to him. The suitcase and the bag discovered by the officers were not his. He did not own any punches and denied telling Bishonden that the punches which were received in evidence as exhibits were his.

■ There was sufficient evidence to prove Cartier guilty of burglary. The court could reasonably infer from the testimony of the police technician that the punch found in his apartment had been used to force open Durland's safe. The fact that appellant had in his possession the tool used in the burglary, together with the evidence of his presence in the establishment on the night of the crime and of his inconsistent statements regarding ownership of the punch, amply justified a finding that he perpetrated the offense. (*People* v. *Ross*, 120 Cal.App.2d 882, 887 [262 P.2d 343] ; *People* v. *Godlewski*, 22 Cal.2d 677 [140 P.2d 381].)

■ The court did not commit error in permitting Officer Bishonden to relate his conversations with appellant. The

testimony of Durland's employe clearly established that someone had entered the premises with the intention of committing theft. This was a sufficient showing of the corpus delicti to warrant the admission of Cartier's extrajudicial statements. (9 Cal.Jur.2d 488-489.)

At the close of the People's case, appellant's counsel unsuccessfully objected to the introduction in evidence of the punches and photographs upon the ground that Cartier had been arrested without probable cause and that the exhibits were obtained as the result of an unlawful search and seizure. The objection was properly overruled.

The evidence we are about to relate clearly established that the officers had reasonable cause for the arrest of Cartier. Officer Berger of the Hollywood Detective Bureau testified that on the afternoon of July 2d his supervisor handed him an all-points bulletin issued by the Newport Police Department and ordered him to make an investigation. The communication was received in evidence as an exhibit. The teletype stated that appellant, his wife and another man were wanted for arrest and investigation in connection with a safe burglary; it contained a description of appellant, listed the license number of his car and stated that Cartier was living in the Los Feliz area. Shortly thereafter, Berger obtained appellant's address from another officer. Berger and his fellow officers then went to the apartment house and after ascertaining that the car mentioned in the teletype was parked nearby, they obtained a passkey from the landlady and entered the apartment.

Captain Allen Johnson of the Newport Police Department testified at length on the issue of probable cause. The following is the substance of his testimony. On June 28th, Johnson was informed by Officer Cook that two men were planning to burglarize the Driftroom, a bar in Corona del Mar, on the morning of the 30th. Cook had obtained the information from James Sullivan, a bartender at the Driftroom, who said that he had been asked by the suspects to furnish them with a key to the premises so that they could obtain a duplicate. Johnson told Cook to tell Sullivan not to furnish a key and ordered Cook to place the suspects under surveillance. Cook reported on the following day that he had observed Sullivan and two men sitting in a car with a Nevada license that was subsequently identified as appellant's. Johnson was informed by another officer on June 29th that appellant's car had been seen that day in the vicinity of Christian's Hut, a barroom in

Newport. On the morning of the 30th, the officers placed the Driftroom under observation but no one attempted to burglarize it; however, Christian's Hut was burglarized that morning and the safe was forced open; the premises were apparently entered with a key. Johnson had a conversation with Sullivan on June 30th. Sullivan related to Johnson what he had told Officer Cook and stated that the two suspects had told him they had a device that would open a safe in 15 minutes. Sullivan knew the suspects only as "Tom" and "Jerry." By telephoning the Las Vegas police, Johnson ascertained that the car with the Nevada plates was registered to Mrs. Cartier. Johnson issued the all-points bulletin on June 30th. On July 2d, Sullivan identified a photograph of Cartier as that of one of the men who had sought to obtain a key from him. Johnson testified that on the basis of the information he had received, he believed that Cartier was implicated in the burglary of Christian's Hut. He had no knowledge of Sullivan's whereabouts at the time of the trial.

There was probable cause for the arrest of Cartier if Berger and his fellow officers were warranted in a reasonable belief that he had committed a felony. ■ It is settled that reasonable cause to justify an arrest may consist of information obtained from others and may be shown by evidence that would not be admissible on the issue of guilt. (*People* v. *Boyles,* 45 Cal.2d 652 [290 P.2d 535].) If Johnson had reasonable cause to believe that appellant was guilty of a felony, Berger was justified in arresting him in reliance on the teletype. ■ Although Johnson had no previous experience with the informer Sullivan, the information he received in the course of his investigation tended to show the latter's reliability and, together with Sullivan's statements, furnished him with reasonable grounds for a strong suspicion that appellant had committed the Newport burglary.

■ Since the arrest was lawful, Berger and his fellow officers had the right to make a reasonable search of the premises under appellant's immediate control and to seize evidence related to that offense. (*People* v. *Guy,* 145 Cal.App.2d 481, 489-490 [302 P.2d 657], and cases cited.) The burglar's tools which they discovered would have been competent and material evidence against appellant in a trial for the Newport burglary. The tools and the photographs prepared by the People's expert also furnished strong evidence of his guilt of the Durland's burglary. They were not to be excluded merely because they were obtained as the result of a lawful search for evidence

connected with the other offense. (*People* v. *Schmitt,* 155 Cal. App.2d 87, 102 [317 P.2d 673].)

The judgment and order appealed from are affirmed.

Wood, (Parker), J., and Vallée, J., concurred.