[Crim. No. 4384.   First Dist., Div. Three.   Feb. 4, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT GHIMENTI, Defendant and Appellant.

Donald R. Abrahamson, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Edward P. O'Brien and Michael R. Marron, Deputy Attorneys General, for Plaintiff and Respondent.

DEVINE, J.—Appellant was found guilty of possession of narcotics. His sole point on appeal is that the search which revealed the contraband was illegal.

## Facts

Inspector Groom of the state narcotic bureau received anonymous phone calls informing him that a man at a certain telephone number (which the inspector traced to appellant) was dealing in heroin. In investigating appellant, Inspector Groom discovered that the Hayward-San Leandro Municipal Court in Alameda County had issued a warrant for appellant's arrest for violation of Penal Code section 12021 (possession of concealable firearm by former felon or addict). One or two weeks before appellant's arrest, Inspector Groom contacted Deputy Robert Sang of the Contra Costa County Sheriff's Office, and told Deputy Sang of the anonymous telephone calls and of the arrest warrant.

At 1:15 p.m. on December 18, 1962, four officers arrived at appellant's apartment: Inspector Groom, Deputy Sang, Deputy Louis Price of the Contra Costa Sheriff's Office, and Officer Bernard of the Alameda County Sheriff's Office. Inspector Groom and Officer Bernard apparently waited on the sidewalk in front of the building; Deputy Price went around to the rear of the building; Deputy Sang went up to the entrance of the apartment. When Deputy Sang knocked, appellant answered; and when Deputy Sang asked appellant if he was Robert Ghimenti, appellant replied that he was. Deputy Sang then displayed his badge and told appellant, "I am from the Sheriff's Office and I have a warrant for your arrest."[1] At this point, appellant began to back away from the door; and when Deputy Sang reached up to open it, appellant turned and ran. Breaking the hook (it was a screen door) and stripping from the door jamb, Deputy Sang pulled the door open and chased appellant as he ran through the apartment to the bathroom. When appellant reached the bathroom, he flushed the toilet, reached for something on the back of the toilet, and put it into the toilet. With the help of Inspector Groom and Officer Bernard, who had followed Deputy Sang into the apartment, Deputy Sang restrained appellant and took him into the living room.

[1]The officers did not have the warrant with them, but this is not necessary for a valid arrest although, if the person arrested requested, the warrant shall be shown to him as soon as practicable. (Pen. Code, § 842; *People* v. *Feeley,* 179 Cal.App.2d 100, 105 [3 Cal.Rptr. 529]; *People* v. *Stewart,* 189 Cal.App.2d 176, 179-180 [10 Cal.Rptr. 879].)

Upon entering the living room, the officers found Mrs. Elsie Rodriguez. Both Mrs. Rodriguez and appellant admitted living in the apartment, Mrs. Rodriguez stating that she occupied the west bedroom and appellant stating that he occupied the east bedroom. Each denied that anyone else lived there, but one Clarence Drew had rented the apartment with appellant. In the living room, Inspector Groom searched appellant and found an ''outfit,'' a small plastic case containing an eye dropper, a rubber bulb, some wire cleaners, and a needle. Appellant admitted that the ''outfit'' was his. While Deputy Sang guarded appellant in the living room, the three other officers then conducted a two-hour search of the apartment. Several items which were contraband or associated with contraband were discovered. Their description and appellant's statements about them at the time of his arrest, and his testimony about them at the trial, follow:

1. A bindle of heroin, found in the pocket of a white jacket in the closet of the west bedroom. Appellant told the officers that he knew nothing of the bindle, but admitted that he owned the jacket. His testimony was the same.

2. A marijuana cigarette found in the pocket of a brown suit jacket, and a marijuana cigarette found in a chest of drawers in the west bedroom. Appellant told the officers that he knew nothing of the first cigarette, but admitted that the jacket in which it was found was his; as to the other cigarette, he denied ownership and said he did not know what the cigarette was. At the trial, he testified that the inspector showed him two cigarettes and said if he, appellant, would cooperate and admit the stuff was his, he would get a break.

3. A hypodermic needle and a spoon, which contained some residue and which was burnt on the bottom, found in a desk in the west bedroom.

4. A matchbox containing marijuana seeds, found under a towel in a hall closet.

5. A vial containing one percodan tablet, found in a box on the floor of the same hall closet.

6. A vial containing 14 codeine tablets, found in a kitchen cabinet.

7. Cigarette papers, found in the living room and in the front room closet. This type of paper is tougher than the normal cigarette paper and is usually found in marijuana cigarettes.

8. A needle box containing an eye dropper with a gasket, three rubber bulbs, a hypodermic needle, and a small piece of cotton, found in the bathroom cabinet.

Appellant denied ownership of items 3 through 8 (he was not charged with any offense in possessing them), except the "outfit." He told police that this was his; at the trial he denied ownership of it, saying that he had admitted ownership just because they had found it in his pocket.

During the search, appellant produced a document explaining that the pistol which had been in his possession had been taken from him. Although several rifles were found, no pistol was discovered in the apartment.

Deputy Sang testified that the purpose of going to appellant's apartment was to serve the warrant on appellant and to arrest him for being an ex-felon with a gun; that the purpose of arresting appellant was to serve the warrant and not to search for narcotics; that at the time of the arrest there was no intent to search for narcotics; and that although Deputy Sang knew from the information received that he might have to search for narcotics, this was not his primary intention. Inspector Groom testified that the purpose of his going to appellant's apartment was to serve the warrant. Deputy Sang explained that Inspector Groom was present because where a warrant is to be served on someone who is possibly using or dealing in narcotics, a state agent is called in so that in case something is found, the agent will be there to identify it.

Asked why the officers searched appellant's apartment, Deputy Sang testified that the search was not exploratory; that the officers searched for a gun and found narcotics; and that after appellant had made the "furtive gesture" of flushing the toilet and after the "outfit" had been found on appellant, the search was both for a gun and for narcotics. Inspector Groom testified that when he was making his search, he was searching for narcotics and not for a gun.

Finally, Deputy Sang testified that appellant was arrested on the warrant and also for violations of Health and Safety Code sections 11500 (possession of narcotic other than marijuana), 11530 (possession of marijuana), and 11555 (possession of paraphernalia used for unlawfully injecting or smoking a narcotic).

### Legality of the Entry and Search

Appellant contends that the real purpose of the officers' visit, entry, arrest, search and seizure was not to

take him into custody because of violation of the gun law, but because of their information regarding his dealing in narcotics. He argues that this purpose is shown by the leading part taken by Inspector Groom, a narcotics agent, who is not concerned with an ex-felon's possessing a weapon, per se. It was Groom, he says, who received the tip, who looked for information about appellant and discovered that the warrant was outstanding, whose search was for narcotics.

He cites authorities, quite correctly, which hold that where the search and not the arrest was the real object of the officers in entering upon the premises, and the arrest was a pretext for or, at most, an incident of the search, the search cannot be held to be reasonable. (*People* v. *Haven,* 59 Cal.2d 713 [31 Cal.Rptr. 47, 381 P.2d 927] ; *People* v. *Roberts,* 47 Cal.2d 374 [303 P.2d 721] ; *Harris* v. *United States,* 331 U.S. 145 [67 S.Ct. 1098, 91 L.Ed. 1399].) ▮ Further, where the arrest is for one crime, a general exploratory search for evidence of other crimes may not be made. (*People* v. *Mills,* 148 Cal. App.2d 392, 399-402 [306 P.2d 1005].)

On the other hand, if a search is being made reasonably, the fact that it yields evidence of a crime other than that which was suspected originally does not in itself render the evidence inadmissible. (*Harris* v. *United States, supra,* p. 155; *People* v. *Aguirre,* 158 Cal.App.2d 304 [322 P.2d 478] ; *People* v. *Moore,* 205 Cal.App.2d 754 [23 Cal.Rptr. 502] [warrant was for sale of heroin, and a gun was found on the premises of appellant, a felon, the reverse of the *Ghimenti* case as to the contraband described in the warrant and the contraband actually found].)

▮ Two of the officers testified that their primary purpose was to execute the warrant. It was testified that Groom was present because where a warrant is to be served on someone who is possibly using or dealing in narcotics, a state agent is called in so that in case something is found, the agent will be there to identify it.

The decision upon the purpose of the officers was essentially for the trial judge to make. (*People* v. *Reyes,* 206 Cal.App.2d 337, 342 [23 Cal.Rptr. 705] ; *People* v. *Taylor,* 176 Cal.App.2d 46, 51 [1 Cal.Rptr. 86].) Unquestionably, he had the right to believe the officers. (*People* v. *Moore,* 205 Cal.App.2d 754, 757 [23 Cal.Rptr. 502].)

We need not discuss how far search might have gone if appellant had yielded to arrest at the door, or demanded to see the warrant. ▮ When he fled at once, the officers were justified in breaking the door and pursuing him, both in

order to protect themselves (the warrant having charged possession of a gun) and, probably, to prevent destruction of evidence. (Pen. Code, § 844; *People* v. *Maddox,* 46 Cal.2d 301, 306 [294 P.2d 6]; *People* v. *King,* 140 Cal.App.2d 1, 8 [294 P.2d 972]; *People* v. *Feeley,* 179 Cal.App.2d 100 [3 Cal.Rptr. 529].) ■ Either at the point of appellant's flight, or a few moments later, when he flushed the toilet, the officers had sufficient cause to believe that he had been guilty of another felony than the gun possession for which the warrant had been issued, namely, narcotics possession. (*People* v. *Reyes,* 206 Cal.App.2d 337, 342 [23 Cal.Rptr. 705].) The informant's report had been corroborated by appellant's acts. (*Willson* v. *Superior Court,* 46 Cal.2d 291, 295-296 [294 P.2d 36].) ■ This cause for arrest was confirmed when the "outfit" was discovered in appellant's pocket. The officers, having arrested appellant, could search his person. (*Charles* v. *United States,* 278 F.2d 386, 388; *People* v. *Reed,* 202 Cal.App.2d 575, 580 [20 Cal.Rptr. 911].) They found this apparatus which, one of them testified, was a "typical thing that you would find on the street with people using this illicit narcotic." The possession of paraphernalia used for injecting a narcotic is unlawful. (Health & Saf. Code, § 11555.) This contraband having been discovered, the officers were justified in searching for narcotics, contraband of similar character, as well as for a gun. (*People* v. *Littlejohn,* 148 Cal.App.2d 786, 792 [307 P.2d 425].)

In *Taglavore* v. *United States,* 291 F.2d 262, cited by appellant, there was present but a feeble pretext for the arrest, on misdemeanor traffic charges, as justifying a search for narcotics, and the trial judge had found that the arrest was not really for the alleged traffic offenses (p. 266). In *United States* v. *Harris,* 321 F.2d 739, also cited by appellant, the trial judge's finding on the primary cause for the entry and search was upheld, not upset, as appellant would desire here. We cannot find, as a matter of law, and against the conclusion of the trial judge, that the arrest was but a sham and a pretext for the search.

### Statements Made by Appellant to the Officers

■ This case was briefed prior to the decision of *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. We have considered the subject of the pretrial statements of appellant in the light of these decisions. All of the statements were made after the arrest, which was

effected immediately after the flushing of the toilet. They are of two kinds. First, there are the admissions that the coats and the dresser in which the narcotics were found belong to appellant. These were accompanied by denials that the narcotics belonged to him, denials which were repeated by appellant in his testimony at the trial. At the trial he stated that Clarence Drew, who had rented the apartment and who had full access to it, had worn his, appellant's, clothes on some occasions. He testified, too, that he had set out the "outfit" on a sink so that he could ask Drew about it.

We believe the statements were admissible. They surely did not constitute a confession, because appellant from beginning to end denied ownership of the contraband. The fact that the articles in which the narcotics were found were admitted by appellant to be his did not preclude his testimony relating to Drew. The finding of the narcotics in the home occupied by the appellant raised a reasonable inference that these were his, even though he shared the place with another or others. (*People* v. *Villanueva,* 220 Cal.App.2d 443, 450 [33 Cal.Rptr. 811]; *People* v. *Elliott,* 186 Cal.App.2d 178, 185 [8 Cal.Rptr. 795].) Without any statements about the ownership of the clothes or of the dresser, the jury could have concluded that the narcotics were in the possession of appellant. Although his admission of the ownership of the coats and dresser may have added something to the weight of evidence against him, on the other hand, the fact that he denied from the very beginning that the narcotics were his, was an element in his favor which was brought out by the admission of the statements. Surely, the jury would have wondered at the incompleteness of the investigation if nothing were presented to them about questions put to appellant. They might well have sensed that there was something incomplete and unfair about the presentation of the case if the evidence had stopped without any reference to conversations between the police and appellant. Besides, it would seem that if there had been no evidence of these statements, the precipitate flight of appellant to the bathroom and the flushing of the toilet (which he denied) would have been convincing evidence of appellant's possession of the narcotics which were found shortly afterward.

The second statement by appellant was a reply to an accusatory remark. It is a reply which does not confess but does not traverse the accusation. An officer said that "pushing" of narcotics was a "heck of a way to make a living."

The officer testified that this statement was made in the living room of appellant's house. By this time the officers had not only the informer's tip but also had discovered that appellant was not a user of narcotics. It would seem that by the time the remark was made, the officers had discovered a rather large sum of money on hand, $243, although appellant was not working and was drawing unemployment insurance. Appellant replied that "sometimes a person had to do things they didn't like to do but they still had to make a living." This, it will be observed, was not a confession of the offense with which he was later charged, for he was charged with possession and not with sale, and, indeed, no evidence of sale appears in the record. The reply, however, may have had an effect in the matter of possession. Appellant in his testimony denied making the statement.

Here, again, we believe the matter is distinct from the *Escobedo* and *Dorado* cases. Escobedo's incriminating statements implicated him in the murder plot. Until he had been pressed, he had not admitted to any knowledge of the crime. Dorado's declaration was a complete confession. In the case before us, there was no gaining of information by appellant's statement which would tie him into a crime committed at another time and place. The contraband had been displayed to the accused by the officers. It had been obtained under the circumstances fully described above. It is not clear that the officer's remark was designed to bring about an admission from the arrested man. Even if the officer's statement was intended to elicit an admission, it would seem to have been directed toward gaining an admission that sales of narcotics had been made, and not particularly toward an admission of ownership or possession of the narcotics which had been discovered. The exchange may have been that of a spontaneous reply to an impulsive remark.

We find no prejudicial error.

Judgment affirmed.

Draper, P. J., and Salsman, J., concurred.