[Crim. No. 2716.    Fourth Dist., Div. Two.    June 30, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. SHIRLEY ANN BOONE, Defendant and Appellant.

Russell E. Parsons for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Elizabeth Miller and Robert F. Katz, Deputy Attorneys General, for Plaintiff and Respondent.

McCABE, P. J.—Appeal from a judgment of conviction of violation of section 487, Penal Code, entered in the Superior Court in and for the County of San Bernardino.

On September 21, 1963, Mr. Paul Edward Teal, the manager of the Gordon Ayres Camera Shop in Ontario, primarily a retail store for the sale of cameras and supplies, purchased for the store a Hassleblad camera made in Sweden. It remained in the store's stock until November 20, 1963. It then had a fair market value of either $600 or $650. Mr. Teal saw the camera on that date.

On November 20, 1963, defendant came into the store with a tall, fairly well-dressed Negro man at approximately the lunch period. Mr. Teal and Mr. Hugh Paz were handling the trade in the store. Defendant inquired of Mr. Paz about a Polaroid camera, and some photographs were taken in demon-

strating such a camera. Meanwhile, the man who came in with the defendant was at the case in which the Hassleblad camera was contained. The case containing the camera was closed. The man who came in with the defendant never moved from the area of the case, and the defendant was about 10 feet further into the store, where the Polaroid demonstration was taking place. When this man left the store, the case was open and the camera was missing. Mr. Teal immediately went out the door and looked both ways. He did not observe the defendant or her companion. To Mr. Teal's knowledge, neither he nor anyone connected with the store gave anyone permission to take the camera. He immediately called the police. Defendant and her companion had stayed in the store not more than 15 minutes. Because there were so few people in the store, Mr. Teal got a very good look at the woman.

Mr. Teal described the defendant to the police as very neatly dressed, wearing a heavy dark coat, and as weighing about one hundred pounds. The store was able to get several pictures from the negative of the picture taken of the defendant during the Polaroid demonstration. Shortly after the camera was taken, one such picture was turned over to the police department. Mr. Teal looked at one of the pictures practically every day until about a month before the trial.

On January 21, 1966, defendant lived with her children and her mother in the City of Los Angeles. On that date, one Arthur Decatur was with defendant in the house. About 9 a.m. on January 21, a sergeant of the Los Angeles Police Department, a fellow officer, and several officers, armed with a federal warrant of arrest for Arthur Decatur, entered defendant's home and arrested him. After the arrest a search was conducted in the presence of defendant. At this time a camera was found in defendant's bedroom and taken into the possession of the officers. Defendant upon being questioned as to the ownership of the camera, replied, it was "ours"—meaning it belonged to Decatur and defendant and that she had had the camera since September 1962 or 1963. She explained she had given Arthur $175 toward the purchase of the camera. The total price was $400 paid to a man whom Decatur had met in an Oakland night club. At the time of the Decatur arrest, the officers knew it was part of the paraphernalia used by Decatur in producing "phony" drivers' licenses.

At the trial defendant testified she purchased the camera in December 1964 from Harold Smith, a friend from San Fran-

cisco, whom she had met in 1962. The purchase took place in a restaurant in Culver City, California.

After the arrest of Decatur, the officers left defendant's home taking the camera with them. Shortly afterwards information was received from C.I.I. that the camera had been taken from the camera shop on November 20, 1963. The officers returned to defendant's home and took defendant into custody. She was "booked" for a violation of section 496, Penal Code (receiving stolen property). Defendant was taken to the federal building where federal officers talked to her but the conversation was never related during the trial.

On January 25, Mr. Teal went to the county jail and saw defendant in the presence of a police officer. At the preliminary hearing Mr. Teal identified defendant as the woman who was in the camera shop just prior to the discovery that the camera was missing. Also, he identified the camera. On this day or the following day, defendant was released into the custody of the Ontario Police Department, San Bernardino County. She was arraigned on January 26 and the trial took place on May 19, 1966.

■ The testimony of the police officer regarding conversations on January 21 with defendant which were after the arrest of Decatur but before defendant was a suspect or arrested was objected to on the grounds the admission was in violation of *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758]; *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]; and *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

In *People* v. *Rollins,* 65 Cal.2d 681, 691-692 [56 Cal.Rptr. 293, 423 P.2d 221], the Supreme Court stated the doctrines of *Escobedo* and *Dorado, supra,* applied to all cases not final before June 22, 1964. Consequently, *Escobedo* and *Dorado, supra,* are to be applied to test whether prejudicial error occurred at defendant's trial.

In *Dorado, supra,* at p. 353, the following tests must be met before a statement is admissible: ". . . (1) the investigation was no longer a general inquiry into an unsolved crime but had begun to focus on a particular suspect, (2) the suspect was in custody, (3) the authorities had carried out a process of interrogations that lent itself to eliciting incriminating statements, . . . ."

When the statements were made, the greatest dignity which can attach to the police procedure is that it was at the investigatory stage. The officers were present because of their

involvement with the Decatur case not to investigate any criminal activity of defendant. The officers were not aware of defendant's implication in the camera theft or that it was stolen until after they left defendant's home.

The questions asked by the officers and directed to defendant were not part of a process of interrogation aimed at eliciting incriminating statements from the defendant. (*People* v. *Stewart,* 62 Cal.2d 571, 577 [43 Cal.Rptr. 201, 400 P.2d 97], affirmed 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602]; *People* v. *Dorado, supra.*)

It is significant that the officers were in the defendant's home on a matter related to Decatur's unlawful possession of mail, i.e., checks taken from a post office box in the City of Los Angeles, a federal offense.

▮ The delay in the arraignment of defendant, in violation of section 825, Penal Code, does not require a reversal unless such delay prevented a fair trial, affected the outcome of the trial or defendant suffered prejudice. (*People* v. *Wilson,* 60 Cal.2d 139, 154 [32 Cal.Rptr. 44, 383 P.2d 452]; *People* v. *Combes,* 56 Cal.2d 135, 142 [14 Cal.Rptr. 4, 363 P.2d 4]; *People* v. *Stroble,* 36 Cal.2d 615, 626-627 [226 P.2d 330], affirmed sub. nom., *Stroble* v. *California,* 343 U.S. 181, 196-197 [96 L.Ed. 872, 883-884, 72 S.Ct. 599].)

Apparently defendant postulates that she was prejudiced by the long detention since Mr. Teal, the owner of the camera shop from which the camera was taken, identified her during this period, and this identification became evidence at her trial. Such postulation is destroyed by the rules pronounced in *People* v. *Van Eyk,* 56 Cal.2d 471 [15 Cal.Rptr. 150, 364 P.2d 326], cert. den. 369 U.S. 824 [7 L.Ed.2d 788, 82 S.Ct. 838]; and *Rogers* v. *Superior Court,* 46 Cal.2d 3, 10 [291 P.2d 929].

▮ In *Van Eyk, supra,* the Supreme Court stated at p. 480: "The rule is settled that evidence obtained during an illegal detention is admissible unless the relationship between the detention and the obtaining of the evidence is such that its use renders the trial unfair."

Under *Rogers, supra,* the test for reversal is whether the identification is a necessary product of the illegal detention. Here there is no essential connection between the illegal detention and the identification made during the detention.

For another and cogent reason we do not accept defendant's postulation. To accept it might be considered as an extension of the fruit of the poisonous tree doctrine and thus

prospectively disqualify a witness from making a subsequent identification of an accused by having complied with a law enforcement officer's request and participating in a tainted identification. (*Payne* v. *United States* (D.C.Cir. 1961) 294 F.2d 723, 727; *People* v. *Stoner,* 65 Cal.2d 595, 601 [55 Cal. Rptr. 897, 422 P.2d 585].)

Defendant proposes that she was not advised of her constitutional right to counsel which prejudiced her, for had she been advised and had had an attorney, the police interrogation, the Teal identification, and the lengthy detention would not have occurred.

■ Defendant's premises do not exist. No statement was made after the elements of *Dorado, supra,* were triggered.

■ There is no violation of privilege against self-incrimination by compelling an accused to submit to identification procedures. (*Schmerber* v. *California,* 384 U.S. 757, 763-764 [16 L.Ed.2d 908, 915-916, 86 S.Ct. 1826]; *People* v. *Ellis,* 65 Cal.2d 529, 533, 534-535 [55 Cal.Rptr. 385, 421 P.2d 393]; *People* v. *Graves,* 64 Cal.2d 208, 210 [49 Cal.Rptr. 386, 411 P.2d 114], cert. den. 385 U.S. 883 [17 L.Ed.2d 111, 87 S.Ct. 175]; *People* v. *Lopez,* 60 Cal.2d 223, 243-244 [32 Cal.Rptr. 424, 384 P.2d 16], cert. den. 375 U.S. 994 [11 L.Ed.2d 480, 84 S.Ct. 634].)

■ The right of counsel does not operate to protect a defendant from revealing evidence which might be used against him which is of a nontestimonial value and which is not procured by a process lending itself to elicitation of confessions or other incriminating statements. (*People* v. *Graves, supra; Rigney* v. *Hendrick* (3d Cir. 1965) 355 F.2d 710, 712, cert. den. 384 U.S. 975 [16 L.Ed.2d 685, 86 S.Ct. 1868]; *Kennedy* v. *United States* (D.C.Cir. 1965) 353 F.2d 462, 466; *People* v. *Lopez, supra.*)

Counsel representing defendant could not have prevented the making of a visual identification. (*United States* ex rel. *Stovall* v. *Denno* (2d Cir. 1965) 355 F.2d 731, 739, cert. granted, 384 U.S. 1000 [16 L.Ed.2d 1014, 86 S.Ct. 1983]; cf. *Kennedy* v *United States, supra; Rigney* v *Hendrick, supra.*)

The recent decisions of the United States Supreme Court on police lineups and the identification made dissipates and clarifies any befogged legal areas. (*United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926] June 12, 1967; *Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951], June 12, 1967; *Stovall* v. *Denno,* 388 U.S. 293

[18 L.Ed.2d 1199, 87 S.Ct. 1967], June 12, 1967.) The trial of the case at bench commenced in May 1966 with the finding of guilt entered on June 2, 1966. In *Stovall, supra,* the rules of *Wade, supra,* and *Gilbert, supra,* are applicable prospectively. We know of no doctrine pronounced by our Supreme Court which is more restrictive.

The stolen camera was admitted into evidence at defendant's trial, and properly so. The law enforcement officers obtained the camera after the lawful arrest of Decatur in defendant's home. The arresting officers had information that Decatur, in manufacturing "phony" drivers' licenses, used a camera. After the lawful arrest, the officers located the camera in the room where Decatur was arrested and took possession of it for use in Decatur's trial. The camera was legally in the custody of the officers for it was obtained in a contemporaneous search of the place where the arrest was made in order to find and seize articles connected with the crime charged against Decatur and the means by which he committed the crime. (*Agnello* v. *United States,* 269 U.S. 20, 30 [70 L.Ed. 145, 148, 46 S.Ct. 4, 51 A.L.R. 409] ; *Stoner* v. *California,* 376 U.S. 483, 486-487 [11 L.Ed.2d 856, 859-860, 84 S.Ct. 889, 891-892].)

After the camera came into the lawful possession of the officers, they discovered it had been stolen. Having heard defendant's statements regarding the present ownership of the camera, the prices paid, and the location of the payment, the officers could properly infer that defendant had in her possession an article of stolen property. With that violation of the law, they charged and booked her. The camera was not rendered inadmissible into evidence by the process by which it came into the possession of the officers. (*People* v. *Ghimenti,* 232 Cal.App.2d 76, 81 [42 Cal.Rptr. 504] ; *People* v. *Lucas,* 180 Cal.App.2d 723, 727 [4 Cal.Rptr. 798] ; *People* v. *Cartier,* 170 Cal.App.2d 613, 618-619 [339 P.2d 172].)

Judgment affirmed.

Tamura, J., and Thompson (Raymond), J. pro tem.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.