[Crim. No. 2577.   Third Dist.   Nov. 24, 1954.]

THE PEOPLE, Respondent, v. RICHARD OLEN HARRISON, Appellant.

Laura O. Coffield for Appellant.

Edmund G. Brown, Attorney General, and G. A. Strader, Deputy Attorney General, for Respondent.

SCHOTTKY, J.—Appellant was indicted by the grand jury of Napa County and charged with two counts of burglary, one alleged to have been committed on January 3, 1954, and the other on January 28, 1954. The jury found him guilty on both counts and his motion for a new trial was denied. This appeal is from the judgment entered on the verdicts and from the order denying a motion for a new trial.

Appellant urges a number of grounds for a reversal of the judgment and order. His first contention is that the evidence is insufficient as a matter of law to support the conviction upon either count. ■ Before discussing this contention we shall give a brief summary of the evidence, bearing in mind the familiar rule that upon an appeal in a criminal case the appellate court must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence and then determine whether the guilt of the defendant is deducible therefrom. (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778].)

■ At approximately 1:50 a. m. on January 3, 1954, Napa City Police Officer Jesse Crowell heard the ringing of a burglar alarm at the Meyers Jewelry Store in the city of Napa, and proceeded to the store to investigate the matter. As he approached the store he noticed that a window on the east side of the store was broken. Some of the articles which had been in the window appeared to be missing, although some watches still remained. The owner of the store, Mr. Wesley Meyer, was summoned to the store, and he verified the fact that a number of watches were missing from the window display. Mr. William Whitman, the business manager of Meyers Jewelry, testified with respect to the serial numbers of the watches which were missing from the stock on the morning of the burglary and these serial numbers corresponded with the serial numbers on two Bulova watches, one a lady's watch, the other a man's watch, which were introduced as People's Exhibits 1 and 2, respectively.

In the early morning hours of January 28, 1954, at approximately 1:55 a. m., the window of Meyers Jewelry Store was again broken. At this time, Mr. Whitman, who was summoned to the scene in the absence of Mr. Meyer, noticed that articles had again been removed from the window. At this time the articles removed consisted of a tray of men's Masonic rings. A tray of rings and two additional Masonic rings were introduced in evidence at the trial as People's Exhibits 3 and 4.

The man's Bulova watch was sold by appellant to a Mrs. Souza on or about January 14, 1954. The watch was delivered by the appellant to Mrs. Souza who, as consideration for the watch, paid a loan of $30 which the appellant owed to Public Loan in Vallejo.

The lady's Bulova watch was found by Officer Corbett on March 1, 1954, during a search of the appellant's house. The watch was in the appellant's bedroom in a small box. The same evening, police officers again returned to appellant's home and found the tray containing seven rings and two Masonic rings under the sofa in the living room. The appellant denied having any knowledge of the lady's watch or the rings, although he admitted selling the man's watch to Mrs. Souza. Although appellant denied having any knowledge of the rings, his stepson testified that he overheard his mother and the appellant discussing the matter of rings subsequent to the second burglary and prior to the arrest of appellant. The rings were first discovered under the couch by the appellant's mother-in-law, while she was cleaning. She showed them to Mrs. Harrison, the appellant's wife. The rings, after their discovery, were left where they were found under the sofa.

With respect to the man's wrist watch, appellant claimed that he obtained it from a homosexual in a bar. Appellant stated that an unknown man gave him the watch as an inducement to get the appellant to come to this man's room. According to the appellant, he then just kept the watch and refused to accompany the man to his room. In short, appellant stole the watch. Appellant claimed that he had not seen this homosexual since this alleged theft from him.

At approximately 1:45 a. m. on January 28, 1954 (the same time as the commission of the second burglary) appellant was seen on the street several blocks from Meyers Jewelry Store by Police Officer Crowell.

Following his arrest, the appellant agreed to submit to a lie detector test. At the trial it was stipulated by counsel for the appellant that the testimony of Albert Riedel, an expert in the giving of lie detection tests, was admissible, and it was further stipulated that said Albert Riedel was qualified as an expert to give his opinion with respect to the results of such test. This witness then testified that when the appellant was asked if he broke the window at Meyers Jewelry Store in Napa, or if he knew who broke the window, he answered "No." In the opinion of Mr. Riedel, the results of the test showed that the appellant was not being truthful in answering these

questions. As the test proceeded further, it also became apparent to Mr. Riedel that the appellant was deliberately attempting to cause irregular movements of the graph of the lie detector machine so that the test would not give an accurate indication of the truth or falsity of his answers. It was Mr. Riedel's opinion that the appellant was deliberately trying to "fix" the results of the test. During the interview, Mr. Riedel concluded that he would be unable on that day to further examine the appellant, and it was agreed that appellant would return at a later date. However, the appellant failed to return for the additional examination.

Appellant argues as to Count One that to find appellant guilty "the jury had to place an inference on an inference. That is, they must have inferred from the fact that the one watch which was found in the Harrison home, was found there, that it must have been brought there by the defendant, and from that inference, inferred that he had obtained it in the commission of the burglary. Or, as to the watch which he gave to Mrs. Sousa, they must have inferred that he did not get it from the man in the Log Cabin, and from that inference, also inferred that he must have obtained it in the commission of the burglary, and therefore must have committed the burglary."

Appellant then argues that the best that can be said for the People's case is that they have proved possession of some of the stolen property, and that possession of stolen property, standing alone, is not sufficient to connect a defendant with the perpetration of the burglary in which the property was taken. Appellant then cites *People* v. *Russell*, 120 Cal.App. 622, where the court said at page 625 [8 P.2d 209]:

"While it is true that the mere possession of stolen property is not sufficient to connect a defendant with the perpetration of the burglary in which the property was taken, it is a circumstance which may be considered by the jury in connection with other evidence. It is also the law that to warrant the conclusion that the accused is guilty of a transaction involving the theft of stolen property there must be, in addition to its possession by the defendant shortly after the commission of the crime, corroborating circumstances, acts, conduct, or declarations of the defendant tending to show his guilt. The failure of the accused to account for such possession upon a theory inconsistent with his guilt of the offense charged, or to show that the possession was honestly obtained, is itself a circumstance tending to show guilt. [Citing cases.] The cases

cited are also authority for the proposition that when property is found in the possession of a defendant shortly after it has been stolen *the corroborating evidence required to sustain a conviction need be but slight,* and that the rule is not only applicable to cases where the charge is larceny, but to all cases where the commission of the crime charged included the stealing of property. [Citing cases.] Among the circumstances which, coupled with the possession of stolen property, have been held sufficient to connect the accused with the crime and to sustain his conviction are flight [citing case]; false statements showing consciousness of guilt [citing cases]; false statements as to how the property came into defendant's possession [citing cases]; assuming a false name and an inability to find the person from whom defendant claimed to have received the property [citing case]; sale of the property under a false name and at an inadequate price [citing cases]; sale of the property with marks of identity removed and failure to account for its possession [citing case], and giving false testimony and an effort to throw away the stolen property [citing case].'' (Emphasis added.)

Similar statements are made in *People* v. *Taylor,* 4 Cal.App. 2d 214 [40 P.2d 870]; *People* v. *Russell,* 34 Cal.App.2d 665 [94 P.2d 400]; *People* v. *Carroll,* 79 Cal.App.2d 146 [179 P.2d 75].

Respondent in reply concedes that mere possession of stolen property is not sufficient evidence in and of itself to sustain a judgment of conviction, but argues that in the instant case the evidence other than possession of the watches and rings by appellant which tend to establish his guilt are the following: His sale of the man's watch to Mrs. Souza under peculiar circumstances; the denial of any knowledge of the rings although he had discussed the rings with his wife; his presence on the street near the scene of the burglary at approximately 1:45 a. m. on the morning of the second burglary, a few minutes prior to the commission of the burglary; his incredible story of having stolen the man's watch from a homosexual; his deliberate attempt to cause the lie detector test to be inaccurate; and the expert opinion of Mr. Riedel that appellant was not telling the truth when he denied the commission of the burglary.

Respondent also states that there is a very strong bit of circumstantial evidence tending to connect the appellant with the commission of these burglaries, arising from the very fact that appellant was in possession of articles taken in both burglaries, each of which was committed in exactly the same

manner, at the same time of day, and at the same jewelry store, within a space of approximately three weeks. It argues that it would be an extremely unlikely circumstance that the appellant would come into possession of the goods stolen in each of these burglaries involving the same *modus operandi* unless he had some connection therewith.

We are satisfied that evidence in the instant case is sufficient to support the conviction upon each count. The admitted possession of the stolen property by appellant does not stand alone, but as hereinbefore pointed out, is supported by adequate circumstantial evidence. We therefore conclude that the contention of appellant that the evidence is insufficient as a matter of law to support the conviction on either count is without merit.

Appellant next contends that the trial judge and the district attorney were guilty of misconduct in the remarks made in connection with defendant's claim of privilege as to his wife's testimony.

The prosecution had called Mrs. Jessie Harrison as a witness. She was asked her name and where she lived. She was then asked the following question, and gave the following answer: "Q. And is Richard Olen Harrison your husband? A. Yes, he is."

Counsel for the appellant then interposed an objection to the testimony of such witness on the ground that she was the wife of the defendant. After some discussion between court and counsel, the court stated that he wished counsel for the defendant to object to a particular question so that he could rule on the objection. Counsel then stated as follows:

"Mrs. Coffield: I object to any testimony on the part of this witness on the claim of privilege that the defendant has as to his wife's testimony."

The following statements were then made by the court and the district attorney, which appellant claims constituted prejudicial misconduct:

"The Court: The Court will sustain the objection. No testimony shall be given that has a tendency to incriminate the husband of this witness.

"Mr. Frisch: All my questions were directed toward the incrimination of the defendant concerning this witness."

No objection was made by appellant's attorney, and said attorney did not assign the above statements as erroneous or request the court to instruct the jury to disregard them.

Appellant contends that statements of the judge and the

district attorney were completely unwarranted, highly prejudicial and tended to convey to the mind of the jury that the judge was convinced of the defendant's guilt.

While the statements of the judge and the district attorney might well have been differently worded, it is clear to us that the judge was merely stating the rule that a wife cannot testify against her husband and that the district attorney was merely indicating that he intended to interrogate her along that line. The fact that counsel for appellant made no objection to these statements at the time and failed to assign them as error indicates strongly that counsel did not regard them as prejudicial. We are satisfied that there is no merit in appellant's claim of prejudicial misconduct.

There is likewise no merit in appellant's final contention that the preparation of the transcript on appeal was unduly or improperly delayed and that, hence, he has been deprived of a speedy determination of his case on appeal. In the first place it does not appear that as a matter of fact the preparation of the transcrpit on appeal was unduly delayed. The notice of appeal was filed on April 26, 1954. The rules on appeal provide that the reporter's transcript shall be filed within 20 days after the filing of the notice of appeal, and that such period may be extended for an additional 60 days. Thus, in the present matter, such time could have been extended to July 16, 1954. The reporter's transcript shows that it was prepared and certified as correct by the reporter on June 30, 1954, well within the time provided by law. We cannot see that the appellant has been deprived of due process of law by the mere technicality of a reporter having failed to obtain in writing an extension of time to July 16th, within which to prepare the transcript.

Furthermore, the fact that there may have been some unjustified delay in preparing the transcript could have no bearing upon the validity of the matters which preceded the filing of the appeal or upon the merits of the appeal.

The judgment and order are affirmed.

Van Dyke, P. J., and Peek, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 22, 1954.