[Crim. No. 6341.   Second Dist., Div. One.   Dec. 16, 1958.]

THE PEOPLE, Respondent, v. TOMMY LEE HAMMOND, Appellant.

Ellery E. Cuff, Public Defender (Los Angeles), and Bernard R. Schulhof, Deputy Public Defender, for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Assistant Attorney General, for Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of the crime of burglary. An information was filed in Los Angeles County on January 18, 1958, charging the defendant with entering the store of Kunin Furniture Company on December 29, 1957, with intent to commit theft therein. The defendant also was charged with four prior felony convictions: the first was for grand theft in December, 1943; the second was for escape from a police officer in August, 1946; the third was for burglary in August, 1946, and the fourth was for burglary in April, 1955. The defendant pleaded not guilty and denied the truth of the allegation of the priors. By stipulation, the cause was submitted on the transcript of the preliminary hearing, each side reserving the right to present further evidence. The matter was heard on April 24, 1958 and May 19, 1958, after two continuances.

The defendant was found guilty as charged, the court fixed the crime as burglary in the second degree and found the prior convictions to be true.

A résumé of the facts is as follows: The Kunin Furniture Company store, located at 4611 South Central Avenue in Los Angeles, was locked up at about 6 to 6:30 o'clock p.m. on Saturday, December 28, 1957. At that time there was on display in the window of said store an R.C.A. portable television set, serial number B 7688876. When the owner of the store arrived the next morning, Sunday, December 29, 1957, at about 6:30 o'clock, a window glass was broken, a rock was on a table near or in front of the window and the portable television set and another television set were missing. No permission had been given to anyone to enter or to take the sets.

About a week later, on January 5, 1958, at about 4:30

o'clock a.m., two policemen were driving south on Vermont Avenue near 54th Street in Los Angeles, when they observed a person looking into the window of a store where some television sets were on display. They saw this person turn toward them, and as they approached, saw him turn on to 54th Street. They also saw another person standing in the doorway at 936 West 54th Street. As the officers glanced around they saw these two persons enter a car which was parked at the curb. The officers found a rock which was moist on top in the doorway of 936 West 54th Street, about three feet from where they had observed the second person standing. They then found the defendant, together with the other two persons, sitting in the automobile. Each of the three persons told a different story as to why they were there, and as to what they were doing. The defendant stated that he was driving Mr. Blunt, the first person observed, home to East 46th Street, and that Mr. Jefferson, person number two observed by the officers, had felt sick and defendant had stopped the car to the end that Mr. Jefferson could get out and relieve himself.

According to the testimony of an automobile salesman, the automobile was purchased by the defendant on December 21, 1957.

In the trunk compartment of the car the officers found a spare tire, a jack, some plaster, some rocks, and a paper tag about $1\frac{3}{4}$ inch by $\frac{7}{8}$ inch in size, bearing the number B 7688876. All three men were placed under arrest and taken to the University Police Station. At the police station an officer showed the paper or tag bearing the figures to the defendant, and asked the defendant if he had ever seen it before. The defendant stated at that time that he did not know anything about it. The officer told the defendant that he had found the tag in the trunk compartment of his car, and the defendant said that he had never seen it before and did not know how it had gotten there.

On January 8, 1958, three days after the arrest, an officer talked with the defendant and defendant stated that he had driven Blunt and Jefferson to 54th and Vermont, that he had learned that Blunt planned to buy some narcotics, and that thereupon he and Blunt got into an argument and he told Blunt that he would not haul him back in his car. The defendant then said that he had purchased the automobile some two weeks or more before that occasion and that he had been in

the sole possession of the automobile and had hauled no furniture, appliances or television sets.

The tag or paper, which was said to have been found in the trunk compartment of the defendant's car, was shown to the owner of the store which had been burglarized. The owner testified that the number on the tag was the same number given to the television set missing from the window of the store. He further stated that when a television set comes from the factory, a tag bearing the serial number is fastened to the outside of the carton in which the television set is packed. He also testified that another tag is affixed to the bottom of the television set itself, which carries the same serial number, and which remains on the set itself until it is sold, and that the set which was in the window of his store and was stolen had such a tag affixed to it. He said further that the tag affixed to the carton and the tag affixed to the set itself are similar and are of the same type. The owner of the store was shown the tag which the officer said had come from the trunk compartment of the defendant's car and was asked, "Then, you would have no way of knowing whether this was the tag from the carton or the tag from the set?", and he answered, "Not positively, no."

In further referring to the tag in question, the following questions were put and answers given by the owner of the store:

"Q. Is there a serial number stapled on them outside of the carton in which this is boxed? A. Yes.

"Q. Is it the same type as this? A. I would say so.

"Q. And it's a—the box, the object the TV set comes boxed in, the carton? A. Yes.

"Q. And on the outside, is it glued or stapled? A. Glued.

"Q. They are similar to this? A. Similar to—it seems to me it was a larger tag, but I would have to look at others.

"Q. You don't know? A. No.

"Q. But it is similar in style? A. Similar in style, yes.

. . . . . . . . . . . . .

"Q. And it would carry the same number on the other tag? A. Yes.

"Q. This tag, you do not place on the television set? A. No, that's glued to the bottom of the TV.

"Q. This tag that is on the box, on the carton, does that come in two sections with a perforated portion? A. In some cases, it does; and in other cases, sometimes there is only one, just the half.

"Q. We are speaking of this particular product and this particular tag. Does it come with a perforated tag? A. I can't answer that question honestly, because I didn't open up this particular box, but I have seen boxes that came in to us where in some cases, there is a perforated tag, in two pieces. In other cases, RCA has already torn off that.

"Q. Isn't the purpose of that perforated section to take it for your use in your inventory? A. No. I have used that one.

"Q. But it is the custom in the trade to use that tag ——

"MR. AISENSON: I object, your Honor.

"THE COURT: Sustained. The witness has stated he doesn't use them."

The owner also stated that the cartons were thrown away after television sets were unpacked therefrom.

The defendant testified in his own behalf and stated that on the night in question he was sick and at the home of a friend. The friend testified to substantially the same thing. The defendant further said that on the morning of January 4, 1958, he was going from his home to his employer's place of business and was flagged down by a person whose car had stalled. The defendant stated that he had tried to help the person in the stalled automobile and had then agreed to haul him and some items contained in some boxes to the man's apartment. That the name of the person helped was Moore, and that he lived at the Western Arms Apartment at 11th and Western. He also testified that he never saw the tag in question before the policeman showed it to him at the jail, and that he had never transported a television set in the rear of the automobile and denied taking part in the burglary; and further stated that he did not know how the tag had gotten into his car unless it might have been on one of the boxes which were used when he had given Moore a lift. The defendant also stated that he had not told the investigating officers, in the first instance, about hauling the boxes for Moore, but that he had told Officer Thimple about it about three days later. Thimple did not testify. The defendant admitted the four prior felonies and stated that he was presently on parole from the last conviction.

The defendant contends that the evidence is insufficient to sustain the conviction. We agree with the defendant.

There is no question that the evidence is more than sufficient to establish that a burglary took place. However, the fact that such occurred and that possibly the defendant participated in it is not sufficient to sustain a conviction.

The only evidence which has any force toward connecting the defendant with the crime consists of his having a tag, similar to the tag which was affixed to the television set which was stolen, in the trunk of his automobile, and the circumstances at the time of his arrest, his conflicting statements concerning why he was at a particular place some eight days after the offense was committed.

True it is that the possession of stolen property, shortly after it is stolen, is a circumstance pointing to the guilt of the accused. (*People* v. *Carroll,* 79 Cal.App.2d 146, 148 [179 P.2d 75] ; *People* v. *Lang,* 142 Cal. 482, 484 [76 P. 232] ; *People* v. *Carswell,* 149 Cal.App.2d 395, 402 [308 P.2d 852] ; *People* v. *Harrison,* 129 Cal.2d 197, 200 [276 P.2d 188].)

It is likewise true that the mere possession of stolen goods is, in and of itself, insufficient to sustain a conviction of burglary. (*People* v. *Jackson,* 146 Cal.App.2d 553, 555 [303 P.2d 767] ; *People* v. *Harrison, supra,* 129 Cal.App.2d 197, 200; *People* v. *Nelson,* 126 Cal.App.2d 453, 454 [272 P.2d 536] ; *People* v. *Howell,* 126 Cal.App.2d 780, 783 [273 P.2d 79].)

In the present case, to sustain the conviction the assumption would have to be made that the tag so found in the automobile was the tag from the television set itself, and this cannot, in justice, be done because the owner himself testified that he could not tell whether the tag in evidence came from the carton which was thrown away, or whether it came from the television set itself. There is no more reason to believe that the tag was from one than from the other. Furthermore if the defendant's testimony was true it could well have come from one of the boxes which were used in the hauling of Moore's goods.

It is true that at the time of the arrest of the defendant, eight days after the crime with which we are concerned was committed, there were many suspicious circumstances. The defendant gave conflicting stories as to why he was there and what he was doing; but it must be remembered that such statements were made with reference to that particular episode, and not as to what occurred on December 28th or December 29th, the date of the burglary in question.

There is, without doubt, ample grounds for considerable suspicion that the defendant was guilty as charged, and it might even be said that the defendant probably was guilty, but that is not sufficient under our law. It is still required that the People sustain the burden of proving the defendant guilty beyond a reasonable doubt—suspicion, no matter how

strong, is not enough. (*People* v. *Wilkins*, 141 Cal.App.2d 557, 560 [297 P.2d 42] ; *People* v. *Rascon*, 128 Cal.App.2d 118, 122 [274 P.2d 899] ; *People* v. *Smith*, 128 Cal.App.2d 706, 709 [275 P.2d 919] ; *People* v. *Colletta*, 100 Cal.App.2d 1 [222 P.2d 922] ; *People* v. *Platnick*, 71 Cal.App.2d 767, 770 [163 P.2d 766].)

The judgment is reversed.

White, P. J., and Lillie, J., concurred.