[Crim. No. 7630.    Second Dist., Div. Two.    Nov. 28, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. HOWARD FRANK WEEMS, Defendant and Appellant.

Thomas S. Bunn, Jr., for Defendant and Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—In a jury trial defendant was convicted of two counts of burglary. He has appealed from the judgment and from the order denying his motion for a new trial. He also has attempted to appeal from the verdict and from the order denying his motion to set aside the information

under section 995 of the Penal Code. ▮▮▮ His sole contention is that the evidence is not sufficient to support the verdict against him. In passing upon the merits of this contention, we shall view the record in the light most favorable to the People as we are required to do following a guilty verdict. (*People* v. *Sweeney*, 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049].)

On May 19, 1960, the residence of Mrs. Jean Davis was burglarized. Property found missing included two watches, four guns, a mink stole and some golf clubs. One of the watches had fifty diamonds around it and was numbered 25062. The other watch was a "Lady Hamilton" with six small diamonds. On May 31, 1960, the home of Mrs. Etta Myer was burglarized. She found that two mink stoles and a cashmere sweater trimmed in mink were missing. One of the mink stoles had her name sewed on it.

On June 6, 1960, appellant entered a jewelry store located in Gardena, and operated by the witness Byrd. Upon entering the store, appellant asked Mr. Byrd whether or not he bought watches, saying that he had "something pretty nice." When Mr. Byrd said he would be glad to look at it, appellant showed him a loose ruby stone and three watches, two of which had been taken from the home of Mrs. Davis. Mr. Byrd bought the watches for $125.

Appellant told Mr. Byrd that his name was "Nino" or "Dino" but gave no last name. Appellant made reference to having some guns and then asked Mr. Byrd whether he wanted to buy some furs. Although Mr. Byrd stated that he was not interested, appellant asked him to take a look at them. Appellant then brought in some furs and a sweater with a "little fur trim." One of the furs had the name "Etta" and some other name sewed on it. When Mr. Byrd said he was not interested, appellant said he would leave the furs and that maybe Mr. Byrd would buy them for his wife.

Mr. Byrd testified that he turned over to Officer Cox of the Gardena Police Department all of the property which he had received from appellant. Officer Cox testified that on June 7, 1960, he picked up at Byrd's store two mink stoles, one of which had the name of Etta D. Myer embroidered inside, a cashmere sweater and three wrist watches which he described in detail, and that he turned this property over to Inspector Sullens of the Long Beach Police Department.

Inspector Sullens testified that after receiving the described property from Officer Cox, he delivered to Mrs. Davis two of

the watches and to Mrs. Myer the two mink stoles and the cashmere sweater. In their testimony, Mrs. Davis and Mrs. Myer identified the items of property returned to them by Inspector Sullens as the property stolen from their respective homes in the burglaries to which they had testified.

On September 21, 1960, Inspector Sullens, and other officers, arrested appellant at his residence located about 5 miles from Mr. Byrd's jewelry store. During this arrest the officers looked into the trunk of appellant's automobile, a 1949 Cadillac. Officer Sullens observed two pry bars, a box hammer and a pair of bolt cutters. None of the usual mechanics' tools was observed in the trunk. Asked what he was doing with that type of tools, appellant answered, "I've already told you I sell anything." Asked where he got the tools, appellant replied, "I bought them to sell." When asked whether he had an invoice for them, appellant just smiled. When asked whether he had a license to sell in the City of Los Angeles or the County of Los Angeles, appellant stated that he did not. Questioned as to what he did for a living, appellant stated that he was a salesman, that he sold anything, and that he worked out of his car.

As they approached Byrd's jewelry store, Officer Welch asked appellant whether he had ever gone into that store for any reason whatsoever. Appellant stated that he had not. The officer asked him whether he had ever used the name of "Nino" or "Dino" and he stated that he had not, but that he was sometimes called "Howdy" or some name similar to that.

Officers Sullens and Castillo and appellant then entered the jewelry store. Mr. Byrd pointed his finger at appellant and stated, "That's the man that I bought the property from that—that is the man I bought the property from from your burglary." Referring to Mr. Byrd, appellant stated that he had never seen that man before in his life. When the officer asked Mr. Byrd whether there was any doubt whatsoever, Mr. Byrd stated that he was absolutely positive that appellant was the man from whom he had bought the jewelry in June. During this discussion appellant made no comment, standing with his head in a bowed position.

Officer Robert D. Sullivan, a police officer for the City of Los Angeles, testified that he had first become acquainted with appellant in November of 1957 and had known him by the nickname "Nino."

The only witness called by the defendant was one Debbas,

who testified that he had known appellant since the early part of 1960, when appellant rented an apartment from him. Debbas testified that around the first of June, 1960, appellant was at his used car lot when a man came on the premises and stated that he had had a hard time at the track and that he had some merchandise that he wanted to trade for a cheap automobile, and that he also wanted a little money. Referring to appellant, Debbas said that "Nino" started talking to the man and finally bought the merchandise from him. The merchandise consisted of a couple of mink stoles, a sweater with a fur piece around the collar and two or three watches. On cross-examination of the witness Debbas, it was brought out that the witness had a conversation with appellant in which appellant told the witness that he had been arrested for stealing the property which he had bought on the used car lot. In the course of this conversation, appellant said that he had taken the property to a jeweler in Gardena.

Reciting the testimony in his opening brief, appellant states that on June 6, 1960, he went to Byrd's jewelry store in Gardena, and "exhibited a loose ruby stone as well as three watches, two of which had been stolen from Mrs. Davis. Appellant left the store and a few minutes later returned with a sack containing fur pieces and a sweater stolen from either Mrs. Davis or Mrs. Myer. Appellant left the fur pieces and sweater with the witness." Thus, the sufficiency of the evidence to support a finding that on June 6, 1960, appellant was in possession of property stolen in the respective burglaries appears to be unquestioned.

While possession of recently stolen property is not sufficient, standing alone, to connect a defendant with a burglary, such possession is a circumstance tending to show guilt. (*People* v. *Smith*, 128 Cal.App.2d 706, 708-709 [275 P.2d 919] ; *People* v. *Goodall*, 104 Cal.App.2d 242, 247 [231 P.2d 119] ; *People* v. *Corral*, 60 Cal.App.2d 66, 72 [140 P.2d 172].) Moreover, the failure of the accused to account for his possession of stolen property upon a theory consistent with his innocence is a circumstance tending to show guilt. (*People* v. *Russell*, 34 Cal.App.2d 665, 669 [94 P.2d 400].) When property is found in the possession of a defendant shortly after it has been stolen, and where the defendant has failed to account for such possession upon a theory consistent with his innocence of the offense charged, the corroborating evidence required to sustain a conviction need be but slight. (*People* v. *Harrison*, 129 Cal.App.2d 197, 200-201 [276 P.2d 188] ;

*People* v. *Russell,* 120 Cal.App. 622, 625 [8 P.2d 209].)

■ False statements concerning material facts are sufficient to provide necessary corroborating evidence. (*People* v. *Harrison, supra,* 129 Cal.App.2d 197, 201; *People* v. *Taylor,* 4 Cal. App.2d 214, 217 [40 P.2d 870].)

■ There was evidence in the instant case that appellant falsely stated that he had never been known as "Nino" or "Dino" and that he had never been in the Byrd jewelry shop. After the police report had been read to Mr. Byrd and the appellant, Mr. Byrd was asked if appellant was the party referred to in that statement as "Nino" or "Dino." When Mr. Byrd answered in the affirmative, appellant remained silent. This could be construed as indicative of guilt. (*People* v. *Murray,* 135 Cal.App.2d 600, 603 [287 P.2d 775].)

■ Furthermore, it appears that shortly after the burglaries appellant was found in possession of burglary tools. Possession of such tools has always been considered significant. (*People* v. *Cartier,* 170 Cal.App.2d 613, 618 [339 P.2d 172]; *People* v. *Wilkes,* 44 Cal.2d 679, 683 [284 P.2d 481].)

■ Appellant did not take the stand as a witness in his own defense. As stated in *People* v. *Adamson,* 27 Cal.2d 478, 489 [165 P.2d 3], "the failure of the defendant to deny or explain evidence presented against him, when it is in his power to do so, may be considered by the jury as tending to indicate the truth of such evidence, and as indicating that among the inferences that may reasonably be drawn therefrom, those unfavorable to the defendant are the more probable."

■ It is hardly necessary to observe that the jury was not bound to give credence to the testimony of the sole defense witness, Debbas. In view of all the incriminating evidence in the record and the failure of appellant himself to testify, the testimony of Debbas to the effect that appellant purchased from some unknown person items of property similar to the property taken in the burglaries did not require the jury to find that appellant had acquired the stolen property innocently. ■ It is elementary law that it is the province of the trier of the facts to determine the credibility of witnesses, to weigh the evidence and to find the facts. (*People* v. *Hughes,* 183 Cal.App.2d 107, 112 [6 Cal.Rptr. 643]; *People* v. *Sinshiemer,* 182 Cal.App.2d 103, 108 [5 Cal.Rptr. 740].) We hold that the verdict of the jury in this case is supported by substantial evidence which is clearly sufficient.

■ There is no appeal from the verdict (*People* v.

*Vetri,* 178 Cal.App.2d 385, 387 [2 Cal.Rptr. 795]), nor from the order denying the motion to set aside the information (*People* v. *Alcala,* 169 Cal.App.2d 468, 472 [337 P.2d 558]); said purported appeals are therefore dismissed.

The judgment and the order denying motion for a new trial are affirmed.

Fox, P. J., and Ashburn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 24, 1962. Peters, J., and Dooling, J., were of the opinion that the petition should be granted.