Filed 4/3/14  P. v. Chavira CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROBERT CHAVIRA et al.,<br><br>    Defendants and Appellants. | D063089<br><br><br><br>(Super. Ct. No. SCD237678)<br><br>ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on March 26, 2014, be modified as follows:

1.     On page 10, in the first sentence of the first full paragraph's complete quote, delete all the words between "crime . . ." and "beyond a reasonable doubt" so the entire quote reads:

"In reviewing a claim for sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt.  We review the entire record in the light most favorable to the judgment below to determine whether it discloses sufficient

evidence—that is, evidence that is reasonable, credible, and of solid value—supporting the decision, and not whether the evidence proves guilt beyond a reasonable doubt. [Citation.] We neither reweigh the evidence nor reevaluate the credibility of witnesses. [Citation.] We presume in support of the judgment the existence of every fact the jury reasonably could deduce from the evidence. [Citation.] If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Jennings* (2010) 50 Cal.4th 616, 638-639.)

There is no change in the judgment.

MCCONNELL, P. J.

Filed 3/26/14 (unmodified version)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROBERT CHAVIRA et al.,<br><br>    Defendants and Appellants. | D063089<br><br><br>(Super. Ct. No. SCD237678) |


APPEALS from judgments of the Superior Court of San Diego County, Louis R. Hanoian, Judge.  Judgment against Chavira affirmed as modified.  Judgment against McKnight affirmed.


Sharon M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant Robert Chavira.

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant Ryan Alan McKnight.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Ronald A. Jakob, Deputy Attorneys General, for Plaintiff and Respondent.

Recidivist offenders Robert Chavira and Ryan Alan McKnight (collectively, defendants) appeal judgments sentencing them to lengthy prison terms after a jury found them guilty of multiple armed robberies and associated crimes.  Defendants challenge the sufficiency of the evidence to support some of their convictions and the denial of a motion for judgment of acquittal on one count, and they also complain of instructional error.  McKnight further contends the trial court abused its discretion in refusing to dismiss the allegations concerning his prior conviction for sentencing purposes.  We modify the judgment against Chavira to correct a sentencing error and otherwise affirm.

I.

FACTUAL BACKGROUND

This case arises out of defendants' four-month crime spree in late 2011.  Because the details of all the crimes are not relevant to the issues raised on appeal, we here describe the crimes and the related investigations only briefly.  We provide additional details in the Discussion section as needed to resolve particular claims of error.

A.      *The Jewelry Store Robberies*

Robberies occurred at the following four jewelry stores in California on the dates indicated:  The Watch Connection in Costa Mesa (Aug. 2, 2011); Ben Bridge Jeweler, Inc. in San Diego (Sept. 16, 2011); Ben Bridge Jeweler, Inc. in San Jose (Oct. 15, 2011); and Leeds & Son in Palm Desert (Oct. 26, 2011).  At each location, the robbers used the

2

same modus operandi:  They stole a Honda Accord from the vicinity, drove to the jewelry store, entered the store during business hours wearing ski masks and gloves and carrying firearms, ordered the employees and customers to get on the floor, smashed display cases with sledgehammers, stole expensive watches and other jewelry, and then fled in and later abandoned the stolen Honda.

Forensic and video surveillance evidence linked defendants to these robberies.  A ski mask containing DNA that matched Chavira's profile was found on the ground near the Honda abandoned after the robbery at The Watch Connection.  Blood left at the San Diego Ben Bridge store and in the Honda abandoned after the robbery of that store contained DNA that matched McKnight's profile.  At the San Jose Ben Bridge store, a video recorder captured the robbery, and one of the robbers had tattoos that matched McKnight's.  Blood found at that store on broken glass and on a sledgehammer the robbers left behind contained DNA matching McKnight's profile.  A sledgehammer left behind after the robbery at Leeds & Son also contained DNA matching McKnight's profile, and DNA matching Chavira's profile and McKnight's fingerprints were found in the Honda abandoned after the robbery.

B.    *The Turner's Outdoorsman Store Burglary*

Around midnight on October 24, 2011, a Turner's Outdoorsman store in San Diego was burglarized.  The metal gate across the glass emergency exit door was pulled off by a chain, and the door was shattered.  Video surveillance showed the burglar using a sledgehammer in an attempt to smash open a handgun display case.  When the attempt proved unsuccessful, the suspect stuffed seven semiautomatic rifles into a bag and exited

3

the store. The store manager testified two of the stolen rifles looked "very similar" to rifles depicted in video surveillance of the robbery at Leeds & Son. Shortly after the break-in at Turner's Outdoorsman, police found a stolen Honda Accord abandoned in the alley behind the store.

C.    *The Barona Casino Robbery and Associated Arson*

At 2:00 a.m. on November 9, 2011, a house under construction on an Indian reservation near the Barona Casino in Lakeside caught fire and eventually burned to the ground. Investigators found a nozzle from a gasoline can at the site and determined the fire had been deliberately set using gasoline as an accelerant.

While the fire was blazing, a Ford Explorer drove up to and parked at the entrance of the Barona Casino. Four men wearing ski masks and bulletproof vests exited the vehicle. The driver kept a rifle trained on casino employees outside the casino and ordered them to get on the ground, while the three other men hauled a chain from the back of the Explorer into the casino. After they entered the casino, one of the masked men fired a gun into the air and told everyone to get on the ground. The men then tried to wrap the chain around a display case advertising a $250,000 cash giveaway and containing stacks of cash. When they discovered the chain was too short, they knocked the display case over, smashed it open, stuffed stacks of cash into a bag, and fled in the Explorer.

Shortly after the robbers left the Barona Casino, a patrol officer found the Ford Explorer abandoned near the casino. In a duffel bag inside the vehicle, an investigator found a box of .22 caliber bullets. Chavira's fingerprints were found on the box. The

4

bullets were of the same caliber as that of a shell casing found on the floor of the casino near the smashed display case.

D.     *Arrest of Defendants and Subsequent Searches*

Police stopped defendants as they were traveling in Chavira's car and arrested them on November 9, 2011. Police searched the vehicle and found a black ski mask and several mobile telephones inside the vehicle. One of the telephones contained text messages written in Spanish that concerned the sale of watches and were dated between October 15 and 26, 2011. Tracking data on the telephones placed defendants in the vicinity of the San Jose Ben Bridge store and the Leeds & Son store on the dates those stores were robbed.

Police searched the motel room in which defendants were staying on the date of the Barona Casino robbery. They found bulletproof vests, ski masks, gloves, and two semiautomatic handguns. One of the handguns was "distinctive" and "appeared to match up perfectly" with a handgun depicted in video surveillance of the robberies at the two Ben Bridge stores and the Barona Casino. Police also found a pair of sneakers that contained gasoline residue and DNA matching McKnight's profile. A Walmart receipt found on a nightstand recorded a purchase of two gasoline cans and a lighter on November 8, 2011. Video surveillance from the Walmart showed McKnight buying those items. The gasoline cans had nozzles that matched the one found during the investigation of the fire that destroyed the house under construction near the Barona Casino.

5

Police also searched two apartments leased by Chavira. In one, police found diamonds stolen in the robbery of Leeds & Son. In the other, police found four of the rifles stolen during the burglary of the Turner's Outdoorsman store and numerous watches and other pieces of jewelry stolen in the robberies at the Ben Bridge stores and at Leeds & Son.

E.     *McKnight's Trial Testimony*

McKnight testified at trial. He admitted committing the robberies at the four jewelry stores and the burglary at the Turner's Outdoorsman, as well as stealing the Hondas used in those crimes. McKnight also admitted he robbed the Barona Casino and started the fire at the nearby house to create a distraction for the tribal police. According to McKnight, Chavira was "innocent" and did not participate in any of the crimes.

II.

PROCEDURAL BACKGROUND

In a consolidated amended information/indictment, the People charged defendants with conspiracy to commit robbery (count 1) (Pen. Code, § 182, subd. (a)(1); subsequent undesignated section references are to this code), 11 counts of robbery (counts 2, 3, 8-11, 13, 14, 25-27) (§ 211); two counts of assault with a deadly weapon or by means of force likely to produce great bodily injury (counts 4 & 5) (§ 245, subd. (a)(1)); nine counts of false imprisonment effected by violence, menace, fraud, or deceit (counts 6, 7, 15-21) (§§ 236, 237, subd. (a)); burglary (count 12) (§ 459); arson (count 22) (§ 451); and two counts of assault with a semiautomatic firearm (counts 23 & 24) (§ 245, subd. (b)). The robbery counts included firearm enhancement allegations (§ 12022.53, subd. (b)), as did

6

the false imprisonment counts (§ 12022.5, subd. (a)). The People charged Chavira with receiving stolen property (§ 496, subd. (a)). The People also alleged that Chavira had prior convictions for robbery (§ 211) and witness intimidation (§ 136.1) that constituted serious felonies for purposes of five-year enhancements (§§ 667, subd. (a)(1), 1192.7, subd. (c)(19), (37)) and strikes for purposes of the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12), and that McKnight had a prior conviction of burglary that constituted a serious felony and a strike (§§ 459, 1192.7, subd. (c)(18)).

The case proceeded to trial by jury on all counts. During the trial, the court dismissed count 4 (assault with a deadly weapon or by means of force likely to produce great bodily injury) and count 28 (receiving stolen property). The jury found defendants guilty of count 1 (conspiracy) and counts 6 through 27 (false imprisonment, robbery, burglary, arson, and assault with a semiautomatic firearm). The jury found Chavira guilty of counts 2 and 3 (robbery), but found McKnight not guilty of those counts. The jury did not reach a verdict on count 5 (assault with a deadly weapon or by means of force likely to produce great bodily injury), which was dismissed. As to McKnight, the jury found true the firearm enhancement allegations attached to all counts on which it returned guilty verdicts. As to Chavira, the jury found true the firearm enhancement allegations attached to all counts on which it returned guilty verdicts, except as to count 11, on which it found the allegations not true.

While the jury was deliberating, McKnight admitted the allegations concerning his prior serious felony conviction. Chavira requested a bench trial on the allegations

7

concerning his prior serious felony convictions, and the trial court found the allegations true.

After the jury returned its verdicts, defendants requested that the trial court dismiss the allegations concerning their prior convictions for purposes of the Three Strikes law. The court denied the requests. The court then sentenced McKnight to prison for 87 years eight months, and sentenced Chavira to prison for a determinate term of 288 years eight months, plus a consecutive indeterminate term of 425 years to life.

III.

DISCUSSION

Defendants raise two claims of error each, and each joins in the other's claims (Cal. Rules of Court, rule 8.200(a)(5)). Chavira contends the evidence was insufficient to support three of his convictions, and the trial court committed prejudicial instructional error. McKnight contends the trial court erred by denying his motion for acquittal on the burglary charge and abused its discretion by refusing to dismiss the allegations of his prior conviction for sentencing purposes. As we shall explain, these contentions have no merit.

A.      *Sufficient Evidence Supports the False Imprisonment Convictions on Counts 15, 20, and 21*

Defendants challenge the sufficiency of the evidence supporting three of the convictions for false imprisonment arising out of the robbery at Leeds & Son (counts 15, 20, & 21). Specifically, defendants argue that because the victims hid in a back office during the robbery, defendants could not have known of the victims' existence and

8

therefore could not have intended to restrict their personal liberty. After setting forth additional background and the applicable standard of review, we shall analyze this argument.

       1.    *Additional Background*

Darlene Bingham, Christine Stein, and Kim Fuerst were working at Leeds & Son when defendants robbed the store. While Bingham and Stein were in the back office and Fuerst was on the sales floor, three armed men wearing ski masks and body armor entered the store, ordered all present to get on the floor and not move, and threatened to shoot them if they did not comply. Fuerst heard a security guard shout a code word indicating trouble, saw one of the masked men holding "a big gun," and then ran to the back office. Stein heard loud noises, glanced at a video surveillance monitor of the sales floor, saw people moving about quickly, and suspected the store was being robbed. After Fuerst ran to the back office, Bingham or Stein closed the vault, and secured the office door, and all three hid under a desk until police arrived a few minutes later. While they were hiding in the back office, Bingham, Stein, and Fuerst were "scared" and did not feel free to leave the office.

Based in part on these facts, the People charged defendants with false imprisonment of Bingham (count 15), Stein (count 20) and Fuerst (count 21) by means of violence, menace, fraud, or deceit. (§§ 236, 237, subd. (a).) The jury returned guilty verdicts against both defendants on each count.

9

2.      *Standard of Review*

"In reviewing a claim for sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime . . .!(KURT: DELETION MADE AT SUGGESTION OF PANEL MEMBER AFTER ROUTING/INITIALING)! beyond a reasonable doubt.  We review the entire record in the light most favorable to the judgment below to determine whether it discloses sufficient evidence—that is, evidence that is reasonable, credible, and of solid value—supporting the decision, and not whether the evidence proves guilt beyond a reasonable doubt.  [Citation.]  We neither reweigh the evidence nor reevaluate the credibility of witnesses.  [Citation.]  We presume in support of the judgment the existence of every fact the jury reasonably could deduce from the evidence.  [Citation.]  If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding."  (*People v. Jennings* (2010) 50 Cal.4th 616, 638-639.)

3.      *Legal Analysis*

To establish the false imprisonment offenses charged in counts 15, 20, and 21, the People had to present evidence that defendants committed an "unlawful violation of the personal liberty of" Bingham, Stein, and Fuerst by means of "violence, menace, fraud, or deceit."  (§§ 236, 237, subd. (a).)  "[T]he essential element of false imprisonment is restraint of the person.  Any exercise of express or implied force which compels another person to remain where he does not wish to remain, or to go where he does not wish to

10

go, is false imprisonment." (*People v. Bamba* (1997) 58 Cal.App.4th 1113, 1123 (*Bamba*).) False imprisonment requires only general criminal intent, i.e., the defendant must intend to commit an act the natural, probable, and foreseeable consequence of which is the nonconsensual confinement of another person. (*People v. Olivencia* (1988) 204 Cal.App.3d 1391, 1399-1400 (*Olivencia*).) As used in section 237, subdivision (a), " 'violence' means ' "the exercise of physical force used to restrain over and above the force reasonably necessary to effect such restraint," ' " and " 'menace' means ' "a threat of harm express or implied by word or by act." ' " (*Bamba*, at p. 1123.)

The evidence the People presented at trial was sufficient to support the challenged false imprisonment convictions. The testimony of percipient witnesses and video surveillance established that three armed men wearing ski masks entered Leeds & Son during regular business hours when several employees were in the store, pointed guns at them, ordered them to get on the floor and not move or risk being shot, and then proceeded to smash display cases and steal watches and other jewelry. We think it a natural, probable, and foreseeable consequence of these intentional acts by the robbers that individuals already in the store would be so frightened that they would suffer nonconsensual confinement by obeying the robbers' orders to get on the floor and remain motionless, or by fleeing to a location in the store they deemed safe and remaining there until help arrived. Indeed, Fuerst, Bingham, and Stein each testified to such fear and confinement. The testimony of these and other percipient witnesses and the video surveillance of the robbery thus established defendants committed an "unlawful violation of the personal liberty of another" by means of "violence" or "menace." (§§ 236, 237,

11

subd. (a); see *Bamba*, *supra*, 58 Cal.App.4th at p. 1123.)  The People did not also have to prove, as defendants erroneously contend, that the robbers knew Bingham, Stein, and Fuerst were in the back office during the robbery or that "the robbers intended to violate the personal liberty of these women."  (See *Olivencia*, *supra*, 204 Cal.App.3d at p. 1399 ["No specific state of mind is required."]; *People v. Swanson* (1983) 142 Cal.App.3d 104, 110 ["No such mental state [analogous to specific intent] is involved in a false imprisonment charge."].)

B.     *The Trial Court Properly Denied the Motion for Judgment of Acquittal on the Burglary Charge*

Defendants complain the trial court erroneously denied their motion for judgment of acquittal on the Turner's Outdoorsman burglary charge (count 12).  They contend that at the close of the People's case, "there was no evidence from which a reasonable trier [of fact] could find beyond a reasonable doubt that [they] had participated in the burglary, either directly or as an aider or abettor."  We again set out additional background and the applicable standard of review before analyzing this contention.

1.     *Additional Background*

After the close of the People's presentation of evidence, defendants moved for a judgment of acquittal on several charges, including the burglary of the Turner's Outdoorsman store charged in count 12.  Defendants argued there was no evidence linking them to the burglary except the discovery of some of the stolen rifles in an apartment leased to Chavira several months after the burglary.  The prosecutor opposed the motion, pointing out that the burglary shared common characteristics with the

12

robberies, and that some of the rifles stolen from Turner's Outdoorsman were used in the robbery at Leeds & Son and later were found in Chavira's apartment. The trial court concluded there was enough circumstantial evidence to go to the jury and denied the motion.

2. *Standard of Review*

In a case tried by a jury, at the close of the People's evidence the defendant may move for a judgment of acquittal on any charged offense "if the evidence then before the court is insufficient to sustain a conviction of such offense . . . on appeal." (§ 1118.1.) "An appellate court reviews the denial of a section 1118.1 motion under the standard employed in reviewing the sufficiency of the evidence to support a conviction." (*People v. Houston* (2012) 54 Cal.4th 1186, 1215 (*Houston*); see pt. III.A.2., *ante*.) The same standard of review applies to cases in which the People rely primarily on circumstantial evidence, but review focuses on the state of the evidence as it stood at the close of the People's case-in-chief. (*Houston*, at p. 1215.)

3. *Legal Analysis*

To establish the burglary charge, the People had to prove defendants entered the Turner's Outdoorsman store with the intent to commit a felony. (§ 459.) The People introduced testimony and video surveillance establishing the store was forcibly broken into and rifles were stolen by a man wearing a ski mask and gloves and wielding a sledgehammer. The People's evidence also showed many similarities between the burglary and the robberies of which defendants were convicted: perpetrators wearing gloves and ski masks, theft and abandonment of a Honda Accord, use of a chain, and use

13

of the same type of sledgehammer. Where, as here, multiple crimes share a distinctive modus operandi, an inference arises that the same person committed the crimes. (*People v. Maury* (2003) 30 Cal.4th 342, 392-393; *People v. Matson* (1974) 13 Cal.3d 35, 40.) Defendants do not challenge the sufficiency of the evidence to support the jury's findings that they committed the robberies, and that evidence supports the inference that defendants committed the burglary as well. In addition, video surveillance of the robbery at Leeds & Son showed defendants used some of the rifles stolen in the burglary to commit the robbery, and some were later found in an apartment leased to Chavira. A defendant's possession of property stolen in a burglary shortly after the burglary occurred supports an inference that defendant committed the burglary. (*People v. Mendoza* (2000) 24 Cal.4th 130, 175-176; *People v. Weems* (1961) 197 Cal.App.2d 405, 409.) Hence, although at the close of the People's case there was no *direct* evidence either defendant burglarized the Turner's Outdoorsman store, the trial court properly denied the section 1118.1 motion because there was ample *circumstantial* evidence from which a reasonable jury could infer they committed the burglary. (*Houston*, *supra*, 54 Cal.4th at p. 1215; see *People v. Reed* (1952) 38 Cal.2d 423, 431 ["Circumstantial evidence is as adequate to convict as direct evidence."].)

C.      *The Trial Court Did Not Violate Defendants' Due Process Rights by Instructing the Jury with CALCRIM No. 376*

Defendants contend the trial court committed prejudicial error and violated their due process rights by instructing the jury with CALCRIM No. 376 that it could find defendants guilty of robbery or burglary if they knowingly possessed recently stolen

property and other evidence tended to prove their guilt.[1]  Defendants complain the instruction "permitted an inference of guilt without a rational basis," "intruded on the fact-finding process, inadequately guided the jury's deliberations, was misleading and confusing," and "created an unbalanced charge to the jury."  These complaints have no merit.

California appellate courts repeatedly have held CALCRIM No. 376 and its predecessor, CALJIC No. 2.15, do not violate a defendant's due process rights by lowering or shifting the People's burden of proof or by permitting an irrational inference of guilt.  For example, the California Supreme Court held that CALJIC No. 2.15 "does not create a mandatory presumption that operates to shift the People's burden of proof to the defense," and does "not create a permissive presumption that violate[s] due process, because ' "reason and common sense" ' justifi[y] the suggested conclusion that defendant's conscious possession and use of recently stolen property tend[] to show his guilt of robbery and burglary."  (*People v. Parson* (2008) 44 Cal.4th 332, 355, 356; see *People v. Letner and Tobin* (2010) 50 Cal.4th 99, 188, 189 [CALJIC No. 2.15 "did not

---

[1]     The trial court instructed the jury with the following adaptation of CALCRIM No. 376:  "If you conclude that either defendant knew he possessed property and you conclude that the property had in fact been recently stolen, you may not convict a defendant of Robbery and/or Burglary based on those facts alone.  However, if you also find that supporting evidence tends to prove his guilt, then you may conclude that the evidence is sufficient to prove he committed Robbery and/or Burglary.  [¶]  The supporting evidence need only be slight and need not be enough by itself to prove guilt.  You may consider how, where, and when the defendant possessed the property, along with any other relevant circumstances tending to prove his guilt of Robbery and/or Burglary.  [¶]  Remember that you may not convict a defendant of any crime unless you are convinced that each fact essential to the conclusion that a defendant is guilty of that crime has been proved beyond a reasonable doubt."

15

shift the burden of proof" or "invite [an] irrational inference"]; *People v. Lopez* (2011) 198 Cal.App.4th 698, 711 [CALCRIM No. 376 "expressly requires the jury to be 'convinced that each fact essential to the conclusion that the defendant is guilty of that crime has been proved beyond a reasonable doubt' " and "does nothing to diminish the prosecution's burden of proof"]; *People v. Solórzano* (2007) 153 Cal.App.4th 1026, 1036 ["Like CALJIC No. 2.15, CALCRIM No. 376 neither undermines the presumption of innocence nor violates due process."].) Defendants here have merely "dust[ed] off the old, hackneyed arguments that were thoroughly discredited under similarly worded CALJIC instructions and recycle[d] them before this court." (*People v. Campos* (2007) 156 Cal.App.4th 1228, 1239.) We reject those arguments and agree with the conclusion reached by our colleagues in the Second District: "CALCRIM No. 376 itself accurately describes the law regarding mental state inferences to be drawn from possession of stolen property. The instruction did not infringe on [defendants'] constitutional rights." (*People v. O'Dell* (2007) 153 Cal.App.4th 1569, 1577.)

D.     *The Trial Court Did Not Abuse Its Discretion by Refusing to Dismiss the Allegations Concerning McKnight's Prior Conviction*

McKnight complains the trial court abused its discretion by refusing to dismiss the allegations of his prior serious felony conviction for purposes of sentencing him under the Three Strikes law. McKnight contends the court "did not adequately consider the particular circumstances of [his] background and the offense," and "a proper examination indicated that he is not the type of unrepentant and unrelenting violent offender

16

contemplated by the Three Strikes law."  We shall analyze McKnight's contentions after providing some additional background and articulating the applicable standard of review.

       1.     *Additional Background*

After the jury returned its verdicts, a probation officer prepared a report on McKnight and filed it with the court prior to the sentencing hearing.  The report contained a section describing McKnight's criminal history, which included convictions of public intoxication, contributing to the delinquency of a minor, multiple thefts, multiple burglaries, and multiple forgeries over the 15 years preceding his commission of the current offenses.  According to the report, McKnight served two prior prison terms and escaped from prison during the second term.  The report described as "abysmal" McKnight's performance while he was on probation or parole for his prior convictions.  With respect to McKnight's current convictions, the probation officer reported that during an interview, McKnight claimed he was the " 'mastermind' " behind each robbery and "still had guns, money and jewelry hidden where 'no one will find them.' "  He admitted he was under the influence of alcohol during each robbery, but had no interest in addressing his alcohol abuse.  McKnight denied he had any intention to hurt anyone in the robberies, but he admitted "he was prepared to 'shoot it out' with police if [he had been] confronted upon exiting a store."

McKnight filed a sentencing statement in which he invited the trial court to dismiss the allegations concerning his prior burglary conviction for purposes of sentencing under the Three Strikes law.  McKnight argued dismissal was appropriate because he had a difficult childhood and suffered from substance abuse problems; neither the prior burglary nor any

of his other previous offenses involved violence; and punishment under the Three Strikes law would be "disproportionate to [his] criminal history."  At the sentencing hearing, McKnight's counsel emphasized that McKnight had no record of violent crimes.

At the sentencing hearing, the court acknowledged its discretion under section 1385 to dismiss allegations of prior convictions in the interest of justice and framed the issue as "whether or not [McKnight] should be treated outside the provisions of the Three Strikes law."  The court noted McKnight "claimed a leadership role in the crime spree" in which most of the offenses were committed with firearms and therefore "involved . . . extreme threats of violence," especially in light of McKnight's admitted willingness "to get involved in a gunfight if confronted by the police."  The court also noted McKnight's lengthy list of convictions dating back to 1996.  The court therefore concluded McKnight "is the reason why there's a Three Strikes law" and denied the motion to dismiss the prior serious felony conviction allegations.

        2.    *Standard of Review*

A trial court may dismiss prior conviction allegations when sentencing a defendant under the Three Strikes law if dismissal is "in furtherance of justice."  (§ 1385, subd. (a); see *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 529-530.)  We review a trial court's refusal to dismiss prior conviction allegations "under the deferential abuse of discretion standard."  (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*).)  "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it."  (*Id.* at p. 377.)

18

3. *Legal Analysis*

The Three Strikes law "establishes a sentencing norm" for recidivist offenders and "creates a strong presumption that any sentence that conforms to [its] sentencing norms is both rational and proper." (*Carmony*, *supra*, 33 Cal.4th at p. 378.) In deciding whether to depart from these sentencing norms by dismissing allegations of a defendant's prior conviction, the court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) "Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Carmony*, at p. 378.)

Under these standards, the trial court properly refused to dismiss the allegations of McKnight's prior burglary conviction. The court's remarks at the sentencing hearing indicate it was aware of its discretion to dismiss the allegations of the prior serious felony conviction and of the factors it was to consider in exercising that discretion. Information regarding those factors was presented at trial, in the probation report (which the trial

19

court read and signed), and in McKnight's sentencing statement.  Those sources established that throughout his entire adult life, McKnight has engaged in a continuous course of progressively more serious criminal activity culminating in numerous and potentially deadly armed robberies in which he played a leadership role.  Previous punishment, including two prison terms, was insufficient to deter McKnight from further criminality.  His poor performance while on probation or parole for prior convictions, attempt to escape from prison, and unwillingness to deal with his alcohol abuse also bode poorly for his future.  The fact McKnight's " 'record is devoid of violence' . . . cannot, in and of itself, take him outside the spirit of the Three Strikes law when [he] is a career criminal with a long and continuous criminal history."  (*People v. Strong* (2001) 87 Cal.App.4th 328, 345.)  "Indeed, [McKnight] appears to be 'an exemplar of the "revolving door" career criminal to whom the Three Strikes law is addressed.' [Citation.] As such, the court's decision not to strike [his] prior[] [burglary conviction] is neither irrational nor arbitrary and does not constitute an abuse of discretion."  (*Carmony*, *supra*, 33 Cal.4th at p. 379.)

E.    *The Trial Court Imposed Unauthorized Sentences on Firearm Enhancements Attached to Two of Chavira's Convictions*

After briefing was completed, we noticed the trial court imposed consecutive prison terms of one year four months each for the firearm enhancements attached to two of Chavira's false imprisonment convictions arising out of the Leeds & Son robbery (counts 18 & 19).  The reporter's transcript indicates the court selected one-third the middle term for each enhancement.  (See § 12022.5, subd. (a) [mandating additional

consecutive term of 3, 4, or 10 years for personal use of firearm in commission of felony].)  We solicited supplemental briefs from the parties on the propriety of prison terms imposed for these enhancements.

In response, the parties agree the trial court imposed unauthorized sentences on the enhancements attached to the convictions on counts 18 and 19.  We concur.  The "one-third the middle term" formula for consecutive subordinate prison terms specified by section 1170.1 and used by the trial court here "applies only to *determinate* sentences.  It does not apply to multiple indeterminate sentences imposed under the Three Strikes law." (*People v. Williams* (2004) 34 Cal.4th 397, 402.)  "[T]he court should impose the full term for enhancements attached to indeterminate terms."  (*People v. Felix* (2000) 22 Cal.4th 651, 656.)  Thus, because the court imposed terms of 25 years to life for the false imprisonment convictions on counts 18 and 19 pursuant to the Three Strikes law (§ 667, subd. (e)(2)(A)(ii), 1170.12, subd. (c)(2)(A)(ii), it should have imposed full terms for the attached firearm enhancements.  (*People v. Lyons* (1999) 72 Cal.App.4th 1224, 1228-1229.)  The failure to do so resulted in unauthorized sentences.

The parties disagree on the proper remedy.  Chavira contends we should remand for a new sentencing hearing to allow the trial court to correct the errors and exercise its discretion in fashioning an aggregate sentence.  The People contend we should modify the judgment against Chavira by imposing the low term for each enhancement instead of remanding for resentencing.  We agree with the People.  A consecutive prison term of at least three years must be imposed for each enhancement at issue.  (§ 12022.5, subd. (a).)  The transcript of the sentencing hearing, however, indicates the trial court would have

21

imposed the upper term of 10 years had it not erroneously concluded it had to impose one-third the middle term.  Given this record and the People's agreement to impose the low term, which is the most favorable disposition Chavira could obtain, a remand for resentencing would not benefit Chavira and would waste judicial resources.  Hence, under our inherent authority to correct an unauthorized sentence and in the interest of judicial economy, we modify the judgment against Chavira to increase the firearm enhancements attached to the convictions on counts 18 and 19 to three years each.  (See *People v. Crooks* (1997) 55 Cal.App.4th 797, 811; *People v. Vasquez Diaz* (1991) 229 Cal.App.3d 1310, 1316.)

## DISPOSITION

The judgment against Chavira is modified to increase the consecutive prison terms imposed for the firearm enhancements on counts 18 and 19 from one year four months each to three years each.  As so modified, the judgment is affirmed.  Upon issuance of the remittitur, the trial court is directed to prepare an amended abstract of judgment reflecting these modifications and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

The judgment against McKnight is affirmed.

                                                          IRION, J.

WE CONCUR:

_____
        McCONNELL, P. J.

_____
           NARES, J.