Filed 9/16/21  P. v. McGee CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073755 |
| v. | (Super.Ct.No. FVI19001362) |
| CHRISTOPHER McGEE, | OPINION |
| Defendant and Appellant. | |


APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Affirmed.

Kevin Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Susan Elizabeth Miller and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I.  INTRODUCTION

Defendant and appellant Christopher McGee was convicted by a jury of residential burglary (Pen. Code, § 459)[1] and, in a bifurcated proceeding, the same jury found true a special allegation that defendant also suffered a prior strike conviction (§§ 1170.12, subd. (a), 667, subds. (b)-(i)).  Defendant was sentenced to 12 years in state prison, representing the upper term of six years for the violation of section 459, doubled as a result of the true finding that he suffered a prior strike.

On appeal, defendant argues:  (1) the trial court abused its discretion in admitting surveillance video evidence without a proper foundation, and (2) the trial court erred in denying his request to instruct the jury that it could not consider evidence from the trial of his current offense when determining whether he suffered a prior strike conviction.  We find no abuse of discretion with respect to the trial court's evidentiary rulings and no instructional error.  Further, even assuming error, we conclude defendant has not shown prejudice warranting reversal.

# II.  FACTS AND PROCDURAL HISTORY

A.  *Facts and Charges*

On April 29, 2019, M.U. returned home in the evening, discovered that the sliding door to her living room had been unlocked, and further discovered items missing from her home.  One of the missing items was a video game console.  M.U. reported the

---

[1]  Undesignated statutory references are to the Penal Code.

incident to law enforcement officers, who eventually traced the serial number from her video game console to a pawn shop.

The pawn shop's records indicated M.U.'s video game console had been brought to the shop by defendant the same day M.U. discovered it was missing. The receipt for the item listed defendant's address and bore a signature that matched the signature corresponding with defendant's state identification card in the state database. Additionally, the pawn shop manager had taken a photograph of defendant and a photograph of defendant's state identification card as part of the transaction involving the video game console.

In a first amended information, defendant was charged with one count of first degree burglary (§ 459, count 1) and one count of receiving stolen property (§ 496, subd. (a), count 2). The information further alleged defendant had suffered a prior conviction for robbery (§ 211) in 2008, qualifying as a prior serious felony under sections 1170.12, subdivisions (a) through (d) and 667, subdivisions (b) through (i).

B. *Bifurcation of Trial on the Prior Strike Offense*

Prior to trial, defendant moved to bifurcate his trial on the issue of whether he suffered a prior conviction, and the trial court granted the motion. Following this ruling, defendant also requested the trial court exclude any evidence of prior convictions for the purpose of impeachment, should he choose to testify in his own defense during his trial on the current offenses.

In the ensuing colloquy, the prosecutor confirmed that the only conviction the People would use for impeachment would be the same conviction alleged in the

information in support of the strike allegation. Defendant conceded that the prior conviction was generally admissible because it involved a crime of moral turpitude but argued the conviction was "old" and should be excluded under Evidence Code section 352. Defendant further acknowledged that "if he were to know that he's going to be impeached with a 2008 conviction, he would be less inclined to testify" in his own defense. The trial court ruled that the evidence of the prior conviction could not be used in the People's case-in-chief, but it could be presented to impeach defendant if he took the stand to testify.

C. *Relevant Evidence at Trial Related to Surveillance Videos*

M.U. testified that, following the incident, she had contacted her neighbors to see if any of them had surveillance video of the incident; a surveillance video was provided to her by the neighbor living in the residence next to M.U.'s; she was familiar with that neighbor's residence; and she had reviewed that video prior to providing it to law enforcement. The trial court allowed the video to be published to the jury over defendant's objection.

The surveillance video depicted an adult male who appeared to have long hair and a short goatee, wearing a black hooded sweatshirt. One excerpt taken from the video depicted the man walking across the front of the neighbor's residence in the direction of M.U.'s home, and a second excerpt taken from the video depicted the same man walking back in the direction he originally came, while carrying bags and items. Following publication, M.U. confirmed the video was a fair and accurate depiction of the surveillance footage she reviewed prior to turning it over to law enforcement.

4

M.U. further testified that she received two additional surveillance videos from other neighbors following a further inquiry. Each of those videos were time stamped and depicted a man wearing a black sweatshirt, walking up to the front door of a residence, and either knocking on the door or looking into a front window. In one of the videos, the man appeared to quickly step behind a pillar at the sound of a vehicle passing on the street. M.U. testified she was familiar with each of areas depicted in the videos, describing one residence as being a half mile from her home and describing the second as being in a nearby neighborhood, slightly less than two miles away from her home. The trial court permitted both of these videos to be published to the jury over defendant's objections.

All of the videos were ultimately admitted into evidence.

D. *Testimony of Defendant*

Defendant elected to testify in his own defense against the advice of counsel. Prior to defendant's taking the stand, defense counsel specifically acknowledged that defendant could be impeached with the record of his prior conviction alleged in the information as the basis of his prior strike offense, but he stated: "I don't think we're going to get into a situation where [defendant] denies that existence." Defendant took the stand and denied ever entering M.U.'s home on April 29, 2019. Upon being asked by his own counsel, defendant admitted pleading no contest to a robbery in 2008.

On cross-examination, defendant further admitted that the 2008 charges involved the use of a firearm. When asked how he came into possession of property belonging to M.U., defendant stated: "I never received any property from nobody's home."

5

Defendant denied ever visiting the pawn shop where M.U.'s video game console was discovered; had no explanation for how the pawn shop would have obtained a copy of his state identification card; and claimed he did not provide his signature to the pawn shop.

E. *Bifurcated Trial, Verdict, and Sentencing*

The jury found defendant guilty on the residential burglary charge in count 1. (§ 459.)[2]

Following this verdict, the matter proceeded to trial on the prior strike allegation, with the People presenting:  a copy of the felony complaint related to the prior conviction, a fingerprint identification card, a booking photograph of defendant, the written plea agreement related to the prior conviction, the minute order indicating acceptance of defendant's plea and sentence, the abstract of judgment related to the prior conviction, and a record of defendant's chronological movement history within the prison system from 2008 through 2013.  The People also called a deputy district attorney as a witness to explain these documents.  Defendant presented no additional evidence in his defense.

---

[2] During trial, the prosecution requested, and the trial court granted, a dismissal of count 2.  (§ 496, subd. (a).)

The trial court instructed the jury with CALCRIM No. 3101,[3] but it declined

defendant's request to give the optional bracketed portion of the instruction.[4]  The jury

found true the allegation that defendant had suffered a prior strike conviction as alleged.

The trial court sentenced defendant to 12 years in state prison, representing the

upper term of six years for the robbery, doubled to 12 years as a result of the true finding

on the strike allegation.

### III.  DISCUSSION

A. *The Trial Court Did Not Abuse Its Discretion in Admitting Video Surveillance*

*Evidence*

On appeal, defendant argues the trial court erred in admitting the surveillance

videos into evidence because the videos lacked adequate foundation.  We find no abuse

of discretion with respect to the trial court's evidentiary rulings and no prejudice

warranting reversal.

---

[3]  CALCRIM 3101 states:  "The People have alleged that the defendant was previously convicted of another crime.  It has already been determined that the defendant is the person named in [the exhibits].  You must decide whether the evidence proves that the defendant was convicted of the alleged crime. . . .  You may not return a finding that the alleged conviction has or has not been proved unless all 12 of you agree on that finding."

[4]  The bracketed portion of CALCRIM 3101 states:  "In deciding whether the People have proved the allegation[s], consider only the evidence presented in this proceeding.  Do not consider your verdict or any evidence from the earlier part of the trial."

1.  The Trial Court Did Not Abuse Its Discretion in Admitting the Surveillance Videos

"The general principles guiding the admissibility of photographic evidence over an objection that the evidence has not been properly authenticated were . . . addressed by our Supreme Court in [*People v. Goldsmith* (2014) 59 Cal.4th 258]. 'A photograph or video recording is typically authenticated by showing it is a fair and accurate representation of the scene depicted. [Citations.]' [Citations.] This foundation may—but need not be— supplied by the photographer or by a person who witnessed the event being recorded; in addition, authentication 'may be supplied by other witness testimony, circumstantial evidence, content and location' and 'also may be established "by any other means provided by law" [citation], including a statutory presumption.' " (*In re K.B.* (2015) 238 Cal.App.4th 989, 994-995, fn. omitted.)

As our Supreme Court has explained, "As with other writings, the proof that is necessary to authenticate a photograph or video recording varies with the nature of the evidence that the photograph or video recording is being offered to prove and with the degree of possibility of error. [Citation.] The first step is to determine the purpose for which the evidence is being offered. The purpose of the evidence will determine what must be shown for authentication, which may vary from case to case. [Citation.] The foundation requires that there be sufficient evidence for a trier of fact to find that the writing is what it purports to be, i.e., that it is genuine for the purpose offered. [Citation.] Essentially, what is necessary is a prima facie case. 'As long as the evidence would support a finding of authenticity, the writing is admissible. The fact conflicting

inferences can be drawn regarding authenticity goes to the document's weight as evidence, not its admissibility.' " (*People v. Goldsmith* (2014) 59 Cal.4th 258, 267.)

"We review the trial court's determination that adequate foundation was laid for abuse of discretion." (*People v. Peterson* (2020) 10 Cal.5th 409, 447.) In the context of a challenge based upon inadequate foundation, if substantial evidence supports each foundational element, the decision to admit such evidence will be upheld. (*Ibid.*)

Here, the relevance of the videos was fairly limited. None of the videos depicted the burglary or even the residence where the burglary occurred. Instead, they each depicted a man—who presumably bore some similarity to defendant—in the general neighborhood and on the same street where the burglary occurred at or around the time of the burglary. As acknowledged by defendant on appeal, the relevance of these videos was only to show defendant might have been physically at the scene or in the neighborhood of M.U.'s home. Given this limited purpose, the proof necessary to authenticate these videos was relatively low.

Since the evidence was being offered only to show the defendant may have been at or near a specified location around the time of the incident, it was sufficient that a witness with personal knowledge testify that the videos accurately depicted the locations they purported to depict around the time of the burglary. M.U. provided such testimony in this case. M.U. testified that she was personally familiar with the physical locations depicted in each video, and that the videos accurately depicted those locations. She further testified that she obtained one video within a day of the burglary and the other two videos within a week of the burglary. M.U.'s testimony was sufficient to make a prima facie

9

showing that the videos depicted events in her neighborhood, and on her street, around the time of the burglary.

Defendant argues that the foundation for the videos was inadequate because the time stamps in the videos were incorrect, the videos may have been edited, and the neighbors who provided the videos were not called as witnesses. These arguments are misplaced, as they go to the weight of the evidence—not its admissibility. Defendant was free to argue that the videos should be disregarded as unreliable for any of these reasons. Likewise, defendant was free to argue that he was not the man depicted in the videos. (See *People v. Leon* (2015) 61 Cal.4th 569, 601 ["[B]ecause the surveillance video was played for the jury, jurors could make up their own minds about whether the person shown was defendant."].) However, if the jury chose to believe M.U.'s testimony, the jury could reasonably conclude that the videos were authentic, which is all that is required to supply foundation for the admissibility of the videos.

Because the video evidence in this case was offered for the purpose of establishing defendant was at or near the physical location where the crime occurred; a witness testified the videos had been obtained shortly after the crime occurred; and a witness with personal knowledge of the physical locations depicted in the videos testified to the accuracy of the videos in that regard, we find no error in the trial court's decision to admit the videos as evidence.

2.  Even If the Trial Court Had Erred, Admission of the Video Evidence Was Harmless

Additionally, even assuming defendant had shown the trial court erred in admitting the surveillance videos at issue, defendant has not shown prejudice warranting reversal.

Generally, claims regarding the erroneous admission of evidence are subject to the standard of review for claims of state law error under *People v. Watson* (1956) 46 Cal.2d 818.  (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 76.)  " '[T]he *Watson* test for harmless error "focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration.  In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result." ' "  (*People v. Winkler* (2020) 56 Cal.App.5th 1102, 1164.)

Here, the evidence linking defendant to the burglary of M.U.'s home was so relatively strong that we conclude there is no reasonable probability the jury would have reached a different outcome even if the video surveillance evidence had been excluded. The video game console taken from M.U.'s home was specifically traced to a pawn shop using its serial number.  The pawn shop's records indicated the video game console had been brought to the shop by defendant the very day it was taken from M.U.'s home. Further, the pawn shop's records related to the video game console included a photograph

11

of defendant, a photograph of his state identification card, and documents containing defendant's personal information and signature. Defendant's possession of M.U.'s game console on the very day it was taken from M.U.'s home is strong evidence of guilt. (See *People v. Anderson* (1989) 210 Cal.App.3d 414, 426 ["possession of recently stolen property is so incriminating that a jury is entitled to infer guilty knowledge and find guilt if there is even *slight* corroborating evidence"]; see also *People v. McFarland* (1962) 58 Cal.2d 748, 754-755 [same].)

Defendant's argument that his possession of stolen property was not enough to support a finding of guilt in this case because the only corroborating evidence was the video surveillance is unavailing. The video surveillance evidence was not the only corroborating evidence before the jury. As numerous cases have recognized, the defendant's inability to explain how possession of stolen property may have been honestly obtained can itself constitute corroborating evidence of guilt. (See *People v. Citrino* (1956) 46 Cal.2d 284, 288-289 [Inconsistencies or doubts raised by the defendant's own testimony may constitute sufficient corroborating evidence to support a robbery conviction.]; *People v. Weems* (1961) 197 Cal.App.2d 405, 409-410 ["While possession of recently stolen property is not sufficient, standing alone, to connect a defendant with a burglary, such possession is a circumstance tending to show guilt"; and the defendant's "[f]alse statements concerning material facts are sufficient to provide necessary corroborating evidence."]; *People v. Clark* (1968) 268 Cal.App.2d 293, 295-296 ["Conflicting or evasive statements are sufficient corroboration, even though slight, to sustain a conviction"; and such statements "tending to prove guilt provide[] valid

12

circumstantial proof of burglary."]; *People v. Anderson* (2007) 152 Cal.App.4th 919, 948 ["[T]he lack of an explanation for possession is one type of corroborating evidence sufficient to support a conviction."].)

Here, defendant testified in his own defense, and he was unable to provide any explanation as to how he came into the possession of M.U.'s property or how the pawn shop where the property was discovered managed to obtain such detailed records identifying defendant as the man who pawned the property. Thus, contrary to defendant's claim on appeal, the video surveillance evidence was not necessary to support a conviction for robbery in this case.

The evidence before the jury suggesting defendant's guilt was strong, even in the absence of the video surveillance evidence defendant complains of on appeal. In fact, defendant's possession and pawning of the property taken from M.U.'s home on the very day it was taken, and his inability to provide any honest explanation as to how he came into the possession of the property is evidence of guilt far stronger than any inference provided by the videos. Thus, we do not believe defendant has shown a reasonable probability he would have obtained a more favorable outcome, even if the video evidence had been excluded.

B. *The Trial Court Did Not Err in Refusing Defendant's Requested Instruction*

Defendant also argues on appeal that the trial court erred in refusing to give the bracketed portion of CALCRIM No. 3101 when instructing the jury during the bifurcated trial on the truth of defendant's prior strike conviction. The bracketed portion of CALCRIM No. 3101 provides a limiting instruction to the jury to disregard evidence

presented during the trial on defendant's current offense when determining the truth of a prior conviction in a bifurcated proceeding. (CALCRIM No. 3101.) Notably, there is no similar suggested limiting instruction when the truth of a prior conviction allegation is tried together with the current offense. (CALCRIM No. 3100.) Because defendant was no longer entitled to a bifurcated trial on the issue of his prior offense at the time that he requested the trial court give the bracketed portion of CALCRIM 3101, we find no error in the trial court's refusal to give the bracketed portion of this instruction.

1. Suggested Limiting Instructions Are Not Required Where the Purpose for Those Instructions Are Not Present in the Case

"A claim of instructional error is reviewed de novo. [Citation.] An appellate court reviews the wording of a jury instruction de novo and assesses whether the instruction accurately states the law. [Citation.] In reviewing a claim of instructional error, the court must consider whether there is a reasonable likelihood that the trial court's instructions caused the jury to misapply the law in violation of the Constitution. [Citations.] The challenged instruction is viewed 'in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner.' " (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.)

Here, there is no likelihood the trial court's refusal to give the bracketed portion of CALCRIM No. 3101 caused the jury to misapply the law. The trial court initially granted defendant's motion to bifurcate the trial on the truth of his prior conviction when it was unclear whether defendant would choose to testify in his own defense. However,

14

during the trial of the current offense, defendant chose to testify against the advice of counsel, and he further voluntarily admitted to suffering the very conviction alleged as the basis of his prior strike offense, even before being cross-examined.

Once defendant chose to testify, he was no longer entitled to a bifurcated trial on the issue of his prior conviction. As our Supreme Court has explained, the intent of a bifurcated trial is to protect against the prejudice a defendant may experience by having the jury hear " 'evidence that involves crimes other than those for which a defendant is being tried.' " (*People v. Calderon* (1994) 9 Cal.4th 69, 75.) However, "when it is clear . . . that the defendant will testify and be impeached with evidence of the prior conviction [citation], denial of a request for a bifurcated trial generally would not expose the jury to any additional prejudicial evidence concerning the defendant." (*Id.* at p. 78; see *People v. Burch* (2007) 148 Cal.App.4th 862, 867 [trial court within its discretion to condition bifurcation on whether defendant chooses to testify].)

Because defendant ultimately chose to testify and disclose the fact of his prior conviction to the jury, there is no possibility that the trial court's refusal to give the bracketed portion of CALCRIM No. 3101 caused the jury to misapply the law in this case. The suggested instructions are intended to guide the jury in situations in which bifurcation is necessitated to avoid potential prejudice posed by exposure to a specific type of evidence. However, where the very purpose of the trial court's initial bifurcation order is obviated by defendant's own decision to testify, defendant is no longer entitled to a bifurcated trial, and any anticipated prejudice these instructions were intended to address is no longer present. That the trial court proceeded to have the issue tried in a

15

bifurcated proceeding does not change the fact that the prejudice the bifurcation was intended to address was no longer present.  There is no error in failing to give an instruction that "states a principle of law not applicable to the case" (*People v. Elder* (2017) 11 Cal.App.5th 123, 135), and the trial court did not err in refusing to give an inapplicable instruction in this instance.

2.  Defendant's Authorities Are Misplaced

On appeal, defendant claims the bracketed portion of CALCRIM No. 3101 is mandated by "a long line of cases extending back nearly a century," citing principally to *People v. Carrow* (1929) 207 Cal. 366 (*Carrow*) as a "seminal case" on this issue. However, a closer examination of defendant's authorities does not support this conclusion.

In *Carrow*, the Supreme Court stated:  "[W]hile a defendant taking the witness-stand may be asked if he has been convicted of a felony, that question goes only to his credibility and this rule would exclude the testimony of defendant in this case so far as

16

the issue of prior conviction is concerned." (*Carrow*, *supra*, 207 Cal. at p. 369.)[5]

However, the issue raised in *Carrow* was the sufficiency of the evidence to support a true finding that defendant had suffered a prior conviction—not the admissibility of evidence or a claim of instructional error.[6] Given this context, it is not surprising that almost every published decision relied upon by defendant involves a challenge to the sufficiency of the evidence to support a true finding on prior conviction allegations. (See *People v. Batwin* (1953) 120 Cal.App.2d 825, 828; *People v. Hamm* (1956) 145 Cal.App.2d 242, 244; and *People v. Coleman* (1962) 209 Cal.App.2d 199, 200-201.) As summarized in *People v. Luckett* (1969) 1 Cal.App.3d 248, these decisions stand for the proposition that the

---

[5] The Supreme Court did not actually engage in any analysis in making this statement but instead cited to *People v. Johnson* (1881) 57 Cal. 571. (*Carrow*, *supra*, 207 Cal. at p. 369.) In turn, *People v. Johnson* involved a defendant who admitted allegations he had suffered a prior conviction at the time of his arraignment, elected to testify in his own defense on the current charges, and was asked whether he suffered a prior conviction in cross-examination. (*Johnson*, at p. 571.) On appeal, the defendant argued the trial court erred in permitting the question because his prior admission removed the issue of his prior conviction from the issues to be tried. The Supreme Court found no error, reasoning that the defendant's prior conviction was still relevant on the issue of his credibility; and, it was in this context that the Supreme Court stated: "The question as to previous conviction is only permitted to go to the credibility of the witness." (*Id.* at p. 574.)

[6] We observe that on two occasions, defendant provides a partial quotation to *Carrow* stating, " 'the jury should have been so instructed,' " to argue the opinion sets forth a rule of evidence implicating jury instructions. However, the phrase appears as follows: "[Defendant] contends upon appeal . . . that this latter question and answer should have gone only to the credibility of the witness and that it was incompetent upon any other issue and that the jury should have been so instructed." (*Carrow*, *supra*, 207 Cal. at p. 368.) Thus, in context, the statement was made only to summarize the argument of a party on appeal. It appears nowhere else in the opinion and is not part of the Supreme Court's reasoning leading to its disposition in the case.

17

prosecution must present evidence other than the defendant's admission during cross-examination in order to prove a prior conviction. (*Id.* at p. 252, fn. 2.)

The prosecution in this case did not rely solely on defendant's admission to prove the prior conviction allegations; and, on appeal, defendant has not challenged the sufficiency of the evidence to support the jury's true finding on this issue. Thus, *Carrow* and its progeny have little, if any, application to this case. The fact that these cases express the view that a defendant's testimony on cross-examination is not sufficient on its own to establish proof of a prior conviction does not translate into a rule that such testimony constitutes inadmissible evidence.[7]

In contrast, more recent authorities have considered the precise question presented by defendant in this appeal and have rejected the argument raised by defendant here. In *People v. Elmore* (1990) 225 Cal.App.3d 953, the First District Court of Appeal held that the trial court could properly consider a defendant's testimony during the trial on his current offense to determine the truth of enhancement allegations in a bifurcated proceeding, concluding that there is "no authority to support [the] claim that evidence from the trial on the underlying offense cannot be considered at the trial on the subsequent enhancement allegations. To preclude the court from considering evidence

_____

[7] Our independent research has disclosed only one published decision citing to *Carrow*, *supra*, 207 Cal. 366, when considering the admissibility of evidence and, even then, it does so for the uncontroversial proposition that evidence of a prior conviction may be admissible for impeachment purposes. (*People v. Cruz* (1978) 83 Cal.App.3d 308, 330.) We have not found any published decisions that have cited to *Carrow* in the four decades since *People v. Cruz*.

properly before it during another part of the trial would be unnecessarily rigid and would hamper rather than further the interests of justice." (*Id.*, at p. 957.)

Likewise, in *People v. Harris* (1992) 8 Cal.App.4th 104, the Fifth District Court of Appeal explicitly held that a defendant's guilt phase admission could properly be used to prove the truth of a prior conviction in a bifurcated enhancement phase. (*Id.* at pp. 106-109.) The Court of Appeal explained that: "Bifurcating the trial does not create two separate actions. Rather, severable issues within one proceeding are determined separately to avoid unnecessary prejudice to the defendant. [Citation.] Thus, the defendant is not placed in a situation where his decision to testify in one proceeding has an effect on a separate collateral proceeding. Rather, when he waives his privilege against self-incrimination by testifying in the guilty phase of the trial, that privilege is waived for the sentencing phase as well." (*Id.* at p. 108.) The situation is "closely analogous to the general evidentiary rule that a defendant's testimony at a former trial is admissible in evidence against him at a later trial. . . . [¶] . . . [O]nce [the] defendant decided to testify and waive his privilege against self-incrimination, his testimony was admissible against him to prove the prior conviction allegations." (*Id.* at pp. 108-109.)

In perhaps a more extreme example, the Court of Appeal in *People v. Reyes* (1962) 206 Cal.App.2d 337, concluded that a trial court's error in prematurely dismissing the jury prior to holding a bifurcated trial did not mandate reversal because the defendant, "while under cross-examination as a witness on his own behalf, admitted that he previously had been convicted and served a term in the state prison as alleged. . . . [H]is testimony constituted an admission in court, under oath, of the truth of the allegations . . .

19

[and] any error resulting in the omission of a finding respecting the allegations in question was not prejudicial and is not grounds for reversal of the judgment." (*Id.* at pp. 345-346.)

Given these authorities, we disagree with defendant's characterization that *Carrow* sets forth a longstanding rule that a jury is precluded from considering the testimony of defendant in the trial of his current offense when determining the truth of prior conviction allegations. When viewed in the context of that decision, *Carrow* discusses the sufficiency of the evidence to support a factual finding. The decision does not otherwise articulate an exclusionary rule of evidence or rule mandating the giving of a limiting instruction. In light of the more recent authorities that have directly addressed the admissibility of a defendant's testimony in a bifurcated proceeding to determine the truth of a prior conviction allegation, we find defendant's attempt to extend the holding in *Carrow* unpersuasive.

## IV.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
                                                                    J.

We concur:


MILLER _____
            Acting P. J.


SLOUGH _____
                        J.